US DISTRICT COURT INDEX SHEET

















MAM

3:02-CV-2429 QUALCOMM V. MAXIM

*53*

*OPPM.*

ORIGINAL

FILED

03 NOV -6 PM 3: 45

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _M. Marwe_ DEPUTY

1  Gerald L. McMahon (36050)
   David J. Zubkoff (149488)
2  SELTZER CAPLAN McMAHON VITEK
   2100 Symphony Towers
3  750 B Street
   San Diego, CA 92101
4  (619) 685-3003

5  Lloyd R. Day (90875)
   James R. Batchelder (136347)
6  Christopher E. Stretch (166752)
   DAY CASEBEER MADRID & BATCHELDER LLP
7  20300 Stevens Creek Blvd., Suite 400
   Cupertino, CA 95014
8  (408) 873-0110

9  Louis M. Lupin (120846)
   Alexander H. Rogers (131879)
10 Roger Martin (195003)
   QUALCOMM INCORPORATED
11 5775 Morehouse Drive
   San Diego, CA 92121
12 (858) 658-1121

13 Attorneys for Plaintiff and Counterdefendant
   QUALCOMM INCORPORATED
14

15                  UNITED STATES DISTRICT COURT

16                  SOUTHERN DISTRICT OF CALIFORNIA

17 QUALCOMM INCORPORATED,                 | 02 CV 2429 B(JFS)

18              Plaintiff,                 | **QUALCOMM INCORPORATED'S
                                           | OPPOSITION TO MAXIM INTEGRATED
19        v.                               | PRODUCTS, INC.'S MOTION TO COMPEL
                                           | NO. 1**
20 MAXIM INTEGRATED PRODUCTS, INC.
   a Delaware Corporation,                 | **DATE:**   NOVEMBER 20, 2003
21                                         | **TIME:**   9:00 A.M.
              Defendant.                   | **CTRM:**   E
22                                         | **JUDGE:**  HONORABLE JAMES F. STIVEN
   MAXIM INTEGRATED PRODUCTS, INC.
23 a Delaware Corporation,

24            Counterclaimant,

25        v.

26 QUALCOMM INCORPORATED,

27            Counterdefendant.

28

QUALCOMM'S OPPOSITION TO MAXIM'S MOTION          CASE NO. 02 CV 2429 B(JFS)
TO COMPEL NO. 1

40759_2

53

1

**TABLE OF CONTENTS**

2

<u>Page No</u>.

3   I.      INTRODUCTION ................................................................................................. 1

4   II.     STATEMENT OF FACTS .................................................................................... 2

5   III.    ARGUMENT.......................................................................................................... 5

6           A.    Contention Interrogatories, Such as Those at Issue Here, Are
7                 Generally Permitted Only Near the Close of Fact Discovery.......................... 5

8           B.    Maxim's Early Contention Interrogatories, Like Most Other Early
                  Contention Interrogatories, Would Create Inefficiency, Unfairness
9                 and Delay. ........................................................................................................ 8

10          C.    Maxim Has Failed to Meet its Burden of Showing How Any Benefit
                  from Early Responses to its Contention Interrogatories Would
11                Outweigh the Prejudice to QUALCOMM..................................................... 11

12          D.    The Infringement Report Demanded Now by Maxim Would Go Far
13                Beyond Any Analysis Required By Rule 11. .................................................. 11

14  IV.     CONCLUSION...................................................................................................... 12

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

TABLE OF AUTHORITIES

2
                                                                    Page No.

3
Cases

4

5
*ADC Telecomms., Inc. v. Thomas & Betts Corp.,*

6
    2001 U.S. Dist. LEXIS 17796 (D. Minn. 2001) ............................................................ 7

7
*B. Braun Medical Inc. v. Abbott Labs.,*

8
    155 F.R.D. 525 (E.D. Pa. 1994) ................................................................. 5, 6, 7

9
*Baltimore Therapeutic Equipment Co. v. Loredan Biomedical, Inc.,*

10
    1993 WL 129781 (E.D. Ca. 1993) ............................................................... 5, 6

11
*County of Suffolk v. Lilco,*

12
    1988 U.S. Dist. LEXIS 6606 (E.D.N.Y. 1988) ................................................... 6

13
*Everett v. USAir Group, Inc.,*

14
    165 F.R.D. 1 (D.D.C. 1995) ......................................................................... 6, 7

15
*Fischer and Porter Co. v. Tolson,*

16
    143 F.R.D. 93 (E.D. Pa. 1992) ..................................................................... 6, 7

17
*In re Bell Atl. Corp. Sec. Litigation,*

18
    1995 U.S. Dist. LEXIS 19151 (E.D. Pa. 1995) ................................................. 6

19
*In re Convergent Techs. Sec. Litigation,*

20
    108 F.R.D. 328 (N.D. Cal. 1985) ........................................................... 6, 7, 11

21
*In re Domestic Air Transp. Antitrust Litigation,*

22
    1992 U.S. Dist. LEXIS 14557 (N.D. Ga. 1992) .............................................. 6, 7

23
*McCarthy v. Paine Webber Group, Inc.,*

24
    168 F.R.D. 448 (D.Conn. 1996) ................................................................... 6, 7

25
*Nestle Foods Corp. v. Aetna Cas. & Sur. Co.,*

26
    135 F.R.D. 101 (D.N.J. 1990) ..................................................................... 6, 7

27
*View Eng'g, Inc. v. Robotic Vision Systems, Inc.,*

28
    208 F.3d 981 (Fed. Cir. 2000) ..................................................................... 12

*Ziemack v. Centel Corp.*,

　　1995 U.S. Dist. LEXIS 18192 (N.D. Ill. 1995) .......................................................... 6, 7

**Other Authorities**

10 Fed. Proc., L. Ed. § 26:387 (2003)................................................................................. 6

Federal Judicial Center, Manual for Complex Litigation,

　　§ 21.463 (2d ed. 1986) ................................................................................................ 6

## I.   INTRODUCTION

Maxim's motion rests on a false premise – that contention interrogatories, such as those at issue here, are generally encouraged at the outset of cases to promote efficiency.  In fact, exactly the opposite is true.  The well-established rule is that, absent extraordinary circumstances not present here, contention interrogatories are permitted only near the *close* of fact discovery.  The policy underlying that rule has been articulated clearly and often:  contention interrogatories near the beginning of discovery tend to cause duplicative effort and other inefficiencies, do little to further the case and narrow the issues, and therefore are productive of almost nothing other than harassment and delay.

The wisdom of that rule is well-demonstrated here.  Judge Brewster has ruled that expert reports on infringement issues should be produced only after the Court's *Markman* ruling, so that infringement reports can be based on (1) discovery from Maxim regarding its products and conduct; and (2) the claims as construed by the Court, rather than the parties' speculation regarding how the claims will be construed.  Yet Maxim Interrogatories Nos. 1 and 2 demand that QUALCOMM now create what amounts to a premature infringement report that exhaustively identifies every infringing product and infringed claim, and maps each limitation in each infringed claim to each corresponding element in each infringed product.  If granted, Maxim's demand would create unfairness, inefficiency and delay, particularly given that:

- QUALCOMM has just begun to obtain the first wave of documents from Maxim regarding its products and conduct, and cannot even begin meaningful depositions on those subjects until the documents are produced;

- Maxim has violated the Stipulated Protective Order by withholding from QUALCOMM attorneys the product-related information needed to begin the exhaustive infringement analyses demanded by Maxim;

- Any infringement report created now would need to be redone later in light of product-related discovery from Maxim and the Court's claims construction;

- Granting Maxim's demand would open a Pandora's box of duplicative claims construction related discovery/disputes, including discovery/disputes pertaining to Maxim's noninfringement and invalidity contentions; and

QUALCOMM'S OPPOSITION TO MAXIM'S MOTION       1              CASE NO. 02 CV 2429 B(JFS)
TO COMPEL NO. 1

40759_2

1   • The inefficiencies created by granting Maxim's demand would threaten to
        delay adjudication of this case, and deprive QUALCOMM of meaningful
2       injunctive relief in this fast-changing market.

3   These inefficiencies are not ameliorated by Maxim's misleading argument that the

4   infringement analysis that it now demands must already have been done in connection with

5   QUALCOMM's pre-Complaint Rule 11 investigation.  Rule 11 requires only that, before a plaintiff

6   alleges that a defendant has infringed a patent, the plaintiff establish a good faith belief that at least

7   *one* claim of that patent is infringed by at least *one* product or activity of defendant.

8   QUALCOMM's responses to Maxim Interrogatories Nos. 1 and 2 reflect that QUALCOMM has

9   satisfied that requirement.  Despite the Rule 11-based argument in its motion, Maxim now demands

10  far more than Rule 11 would require: an exhaustive analysis mapping *every* infringed claim to *every*

11  infringing product/activity on an element-by-element basis.

12      A party propounding a contention interrogatory early in discovery bears the burden of

13  showing why an early response to the interrogatory is justified.  Maxim has failed to meet this

14  burden here.  Its motion should be denied.

15  **II.   STATEMENT OF FACTS**

16      Maxim Interrogatory No. 1 states:

17      Identify each "Maxim Accused Product or Method" and identify the claims of the
        Patents-In-Suit allegedly infringed for each identified product and/or method
18      listing which claims of the Patents-In-Suit are allegedly infringed by which
        identified products and/or methods.[1]
19
        Maxim Interrogatory No. 2 states:
20
        With specific reference to actual documents, drawings, photographs, and/or
21      sketches of the Maxim Accused Products or Method, using reference numerals
        directed to portions of actual documents, drawings, photographs, and/or sketches,
22      describe in detail how each and every claim of the Patents-In-Suit for which
        infringement is alleged is infringed, and also describe how each claim is infringed
23      (e.g. directly, contributorily, by inducement; and literally, or under the doctrine of
        equivalents).[2]
24

25  These contention interrogatories ask QUALCOMM to state which Maxim products it contends

26  _____

27  [1] Lin Decl. Ex. A, at 5.
    [2] *Id.*
28

40759_2

1   infringe which claims of the patents-in-suit, and to explain the underlying theory upon which it bases

2   these contentions.

3       During a Status Conference on August 28, 2003 before Judge Brewster, counsel for Maxim

4   explained that Maxim propounded Interrogatories Nos. 1 and 2 to determine whether QUALCOMM

5   had a Rule 11 basis for filing suit:

6           [T]he Federal Circuit has made clear that under Rule 11, before a party can bring
        a patent case, they need to have a basis to map the accused product to each and

7           every element of a claim.  And our discovery is propounded to find out what their
        Rule 11 basis for having sued us in the first place is.[3]

8

9   On September 16, 2003, QUALCOMM responded to Maxim Interrogatories Nos. 1 and 2, meeting

10  and exceeding Rule 11 by identifying, for each patent-in-suit, one Maxim product that it believes

11  infringes the patent as well as *all* claims of that patent that it currently believes are infringed by that

12  product.[4]

13      Despite the fact that QUALCOMM addressed Maxim's Rule 11 concerns, Maxim demanded

14  more.  Specifically, Maxim demanded that QUALCOMM conduct an exhaustive analysis to: 1)

15  identify *every* Maxim product that it believes infringes the patents-in-suit, 2) identify *every* claim it

16  believes to be infringed by *every* Maxim product, 3) for *every* independent claim, provide a detailed

17  description of its infringement theories, and 4) for *every* act of inducement by Maxim, an element-

18  by-element mapping of *every* element of *every* infringed claim to *every* corresponding element in

19  *every* implicated product of Maxim, QUALCOMM and third parties.[5]  Maxim characterizes this

20  demand as a "compromise,"[6] but in reality this so-called "compromise" would *expand* the scope of

21  Interrogatories Nos. 1 and 2 by requiring the detailed analysis of QUALCOMM's inducement-

22  related contentions identified above.[7]  In any event, Maxim's current motion seeks to compel

23

24  [3] 8/28/03 Hearing Tr. at 53:20-54:1 (attached as Lin Decl. Ex. B).

25  [4] Lin Decl. Ex. C.

    [5] Lin Decl. Exs. D and E.

26  [6] Memorandum of Points and Authorities in Support of Maxim's Motion to Compel No. 1 (Maxim

27      Interrogatories Nos. 1 and 2) (hereinafter, "Maxim Memo."), at 6-7.

    [7] *See* Maxim Interrogatories Nos. 1 and 2, set forth above.

28

1    QUALCOMM to answer Interrogatories Nos. 1 and 2 in their entirety.

2         During the August 28 Status Conference before Judge Brewster, Maxim tried to convince

3    Judge Brewster to incorporate into the Case Management Order a requirement that QUALCOMM

4    provide Maxim with an infringement chart detailing its infringement theories, as contemplated in

5    Maxim's interrogatories, prior to the Court's *Markman* claim construction hearing.[8]  Judge Brewster

6    declined to do so, deferring to Judge Stiven the question of whether such a requirement would do

7    more harm than good.[9]

8         After receiving Maxim Interrogatories Nos. 1 and 2, QUALCOMM propounded analogous

9    interrogatories to Maxim, focusing on Maxim's prior art invalidity contentions.  QUALCOMM

10   Interrogatories Nos. 13 and 14 ask Maxim to identify every prior art publication and product that

11   Maxim contends renders the patent claims invalid, and to map each element of each piece of prior art

12   to the corresponding elements of each claim of the patents-in-suit.[10]  Because one cannot accurately

13   map product elements to claim elements without first understanding both the details of the products

14   and what the claims mean, QUALCOMM proposed to Maxim during meet-and-confer that all

15   *Markman*-based mappings such as those requested in Maxim Interrogatories Nos. 1 and 2 and

16   QUALCOMM Interrogatories Nos. 13 and 14 should be done after the claim construction hearing,

17   with the assistance of experts, as contemplated by Judge Brewster.[11]  Maxim refused this proposal,

18   but also has not provided the mapping analysis requested in QUALCOMM Interrogatories Nos. 13

19   and 14.[12]

20        Discovery is still in its early stages.  The first formal discovery request in the case was served

21   by Maxim on July 30, 2003.[13]  Maxim's Interrogatories Nos. 1 and 2 were served two weeks later.[14]

22

23   [8] 8/28/03 Hearing Tr. at 29:10-30:14 (Lin Decl. Ex. B).
     [9] *Id.* at 57:17-58:4.

24   [10] Lin Decl. Ex. F, at 11-12.

25   [11] Lin Decl. Ex. G, at 6.

26   [12] *Id.*; Lin Decl. Exs. H and I; Maxim's Supplemental Responses to QUALCOMM's First Set of
     Interrogatories (Nos. 1-18), at 23-24.

27   [13] Lin Decl. Ex. J.

28   [14] Lin Decl. Ex. A.

1  Fact discovery is not set to close until July 19, 2004.[15]  The parties have just started exchanging

2  documents in response to requests for production.  Only one deposition has been taken in the case,

3  by QUALCOMM.

4       QUALCOMM and Maxim have entered into a Stipulated Protective Order in the case, under

5  which certain named in-house attorneys for each party are permitted access to all documents

6  produced in the case, regardless of their confidentiality designation.[16]  Despite having negotiated and

7  signed this agreement, Maxim now refuses to produce documents containing information on Maxim

8  products that it considers to be "highly confidential" unless QUALCOMM agrees not to show these

9  documents to the three QUALCOMM in-house attorneys designated in the Stipulated Protective

10  Order.[17]

11  **III.  ARGUMENT**

12      A.  **CONTENTION INTERROGATORIES, SUCH AS THOSE AT ISSUE HERE, ARE
13         GENERALLY PERMITTED ONLY NEAR THE CLOSE OF FACT DISCOVERY.**

14       "Contention interrogatories ask a party: to state what it contends; to state whether it makes a

15  specified contention; to state all the facts upon which it bases a contention; to take a position, and

16  explain or defend that position, with respect to how the law applies to facts; or to state the legal or

17  theoretical basis for a contention."[18]  Maxim Interrogatory No. 1 asks QUALCOMM to state which

18  Maxim products QUALCOMM contends infringe which claims of the patents-in-suit.  Maxim

19  Interrogatory No.2 then asks QUALCOMM to explicate those infringement contentions in

20  painstaking detail, providing for every claim an element-by-element mapping to every infringing

21  product.  Interrogatories Nos. 1 and 2 therefore fall squarely within the definition of contention

22  interrogatories.[19]

---

23

24  [15] Lin Decl. Ex. K, at 4.

25  [16] See 10/16/03 Memorandum of Points and Authorities in Support of QUALCOMM Incorporated's
Motion to Compel Compliance with Stipulated Protective Order (hereinafter, "Protective Order
26  Memo.").

[17] See id.

27  [18] B. Braun Medical Inc. v. Abbott Labs., 155 F.R.D. 525, 527 (E.D. Pa. 1994).

28  [19] See, e.g., Baltimore Therapeutic Equipment Co. v. Loredan Biomedical, Inc., 1993 WL 129781, at

1    Maxim's motion rests on the false premise that contention interrogatories, such as Maxim

2  Interrogatories Nos. 1 and 2, are routinely permitted early in discovery.  In fact, exactly the opposite

3  is true.  As a general rule, contention interrogatories early in discovery are *improper*, and the burden

4  lies on the propounding party to justify the use of an early contention interrogatory.[20]

5

6    *15 (E.D. Ca. 1993) ("During discovery, Loredan served a contention interrogatory requiring BTE
7    to identify the manner in which it alleged the WorkSET infringed the individual elements of the
     '783 patent.").

8    [20] *In re Convergent Techs. Sec. Litigation,* 108 F.R.D. 328, 338-39 (N.D. Cal. 1985) (early
9    contention interrogatories are disfavored, and are barred unless they are narrowly framed and the
     propounding party makes a sufficient showing "that there is good reason to believe that answers to
10   its well-tailored questions will contribute meaningfully to clarifying the issues in the case,
     narrowing the scope of the dispute, or setting up early settlement discussions, or that such answers
11   are likely to expose a substantial basis for a motion under Rule 11 or Rule 56."); *B. Braun
     Medical,* 155 F.R.D. at 527 (stating that "[t]he party serving contention interrogatories bears the
12   burden of proving how an earlier response assists the goals of discovery," and refusing to compel
     responses to early contention interrogatories because propounding party failed to meet this
13   burden); *Fischer and Porter Co. v. Tolson,* 143 F.R.D. 93, 96 (E.D. Pa. 1992) (stating that "[a]
     party filing contention interrogatories early in the pretrial period, before substantial documentary
14   or testimonial discovery has been completed, has the burden of justification," and holding that
     defendant had failed to meet this burden); *Nestle Foods Corp. v. Aetna Cas. & Sur. Co.,* 135
15   F.R.D. 101, 110-111 (D.N.J. 1990) (refusing to compel responses to early contention
     interrogatories because "[t]his Court agrees that judicial economy as well as efficiency for the
16   litigants dictate that contention interrogatories are more appropriate after a substantial amount of
     discovery has been conducted."); *McCarthy v. Paine Webber Group, Inc.,* 168 F.R.D. 448, 450
17   (D.Conn. 1996) (refusing to compel responses to defendant's contention interrogatories because,
     while court found that the contention interrogatories sought clearly relevant information,
18   "defendant has not shown why any relevance of the information that is sought by these
     interrogatories outweighs the burden its collection would impose on plaintiffs at this time while
19   discovery is ongoing."); *Everett v. USAir Group, Inc.,* 165 F.R.D. 1, 3 (D.D.C. 1995) (party failed
     to show sufficient justification for propounding early contention interrogatories); *County of Suffolk
20   v. Lilco,* 1988 U.S. Dist. LEXIS 6606, *4 (E.D.N.Y. 1988) ("At this point in the proceedings,
     forcing the plaintiffs to answer these interrogatories is not justified when balancing the burden
21   imposed by the plaintiffs in responding to these requests against the likelihood that useful
     information will be produced."); *In re Domestic Air Transp. Antitrust Litigation,* 1992 U.S. Dist.
22   LEXIS 14557, *4 (N.D. Ga. 1992) ("The Court does not find, as defendants urge, that substantial
     discovery has been completed.  Plaintiff's responses to the contention interrogatories at this point
23   without the benefit of more discovery would do little to further the defense."); *Conopco, Inc. v.
     Warner-Lambert Co.,* 2000 U.S. Dist. LEXIS 1601, *12-14 (D.N.J. 2000) (ordering responses to
24   contention interrogatories only after further discovery completed); *Ziemack v. Centel Corp.,* 1995
     U.S. Dist. LEXIS 18192, *5-6 (N.D. Ill. 1995) (contention interrogatories allowed because
25   discovery was substantially complete); *In re Bell Atl. Corp. Sec. Litigation,* 1995 U.S. Dist. LEXIS
     19151, *2-4 (E.D. Pa. 1995) (contention interrogatories allowed because discovery had been
26   substantially complete for almost two months); *see also* Federal Judicial Center, Manual for
     Complex Litigation, § 21.463 (2d ed. 1986) (court must carefully control both the timing and
27   content of contention interrogatories because, "[w]ithout such controls, substantial time, money,
     and energy may be wasted on contention interrogatories that are either premature or
28   overinclusive"); 10 Fed. Proc., L. Ed. § 26:387 (2003) ("the interests of judicial economy and
     efficiency for the litigants dictate that contention interrogatories are more appropriate after a

1    This well-established rule has been applied in both patent cases[21] and non-patent cases[22]

2  alike.  In addition, at least one district court, the Southern District of New York, has implemented a

3  local rule governing all cases – including patent cases – explicitly prohibiting the use of contention

4  interrogatories until the conclusion of all other discovery.[23]

5    The policy against early contention interrogatories is based on a recognition that "contention

6  interrogatories that are served early in the pretrial period often generate friction between parties,

7  contribute relatively little to the case development process, and more than occasionally are used to

8  impose economic pressures on opponents, to otherwise harass them, or to delay progress toward

9  trial."[24]  As one court has noted, efficiency and fairness considerations weigh heavily against early

10  contention interrogatories:

11    Efficiency prescribes that the parties should not be obliged to answer contention
     interrogatories repeatedly.  Further, because one of the chief purposes of
12    contention interrogatories is to narrow the issues for trial, fairness dictates that
     parties not be forced to prematurely take a position, which would produce an
13    artificial narrowing of the issues, instead of an informed paring down.[25]

14  In considering whether to compel answers to early contention interrogatories, courts therefore should

15  consider "whether those early answers are likely to require multiple supplemental answers or

16  prematurely commit Plaintiffs to positions and artificially narrow the issues."[26]

17

18

19
---
    substantial amount of discovery has been conducted").

20
21  [21] See, e.g., B. Braun Medical, 155 F.R.D. at 527; Conopco, 2000 U.S. Dist. LEXIS 1601 at *12-14;
     ADC Telecomms., Inc. v. Thomas & Betts Corp., 2001 U.S. Dist. LEXIS 17796, at *11-12 (D.
21  Minn. 2001).

22  [22] See, e.g., Fischer and Porter, 143 F.R.D. at 96 (securities violation); Nestle Foods, 135 F.R.D. at
     110-111 (insurance claim); McCarthy, 168 F.R.D. at 450-51 (civil RICO); Everett, 165 F.R.D. at 3
23  (ERISA claim); In re Domestic Air Transp., 1992 U.S. Dist. LEXIS 14557, at *3-5 (antitrust).

24  [23] See Local Rules of the United States District Courts for the Southern and Eastern Districts of New
     York, Local Civil Rule 33.3(c), attached as Lin Decl. Ex. L ("At the conclusion of other discovery,
25  and at least 30 days prior to the discovery cut-off date, interrogatories seeking the claims and
     contentions of the opposing party may be served unless the court has ordered otherwise.").

26  [24] In re Convergent Techs. Sec. Litigation, 108 F.R.D. at 335.

27  [25] Ziemack v. Centel Corp., 1995 U.S. Dist. LEXIS 18192, at *5 n. 3 (N.D. Ill. 1995).

    [26] Id. at *6.
28
    QUALCOMM'S OPPOSITION TO MAXIM'S MOTION
40759_2  TO COMPEL NO. 1                                    7                CASE NO. 02 CV 2429 B(JFS)

B. **MAXIM'S EARLY CONTENTION INTERROGATORIES, LIKE MOST OTHER EARLY CONTENTION INTERROGATORIES, WOULD CREATE INEFFICIENCY, UNFAIRNESS AND DELAY.**

These efficiency and fairness considerations weigh heavily against compelling answers to Maxim's early contention interrogatories here. Since QUALCOMM has yet to receive much of the needed discovery from Maxim on its products and conduct, the details of QUALCOMM's infringement positions are still preliminary, and may change significantly as discovery progresses. Moreover, QUALCOMM's infringement-related discovery efforts have been further hindered by Maxim's refusal to honor the provision of the Stipulated Protective Order requiring Maxim to disclose its product information to QUALCOMM's most technically experienced counsel.[27] QUALCOMM's detailed infringement contentions also are dependent on the Court's construction of the patent claims at the *Markman* hearing.

If Maxim's motion were granted, QUALCOMM would be required to expend considerable time and resources preparing and supplementing detailed descriptions of its developing infringement contentions. The burden of preparing these answers is extreme, when one considers that the five patents-in-suit contain a combined total of 50 claims, and Maxim has identified 47 integrated circuit products that are potentially infringing.[28] A comprehensive response to Maxim Interrogatories Nos. 1 and 2 therefore would require an element-by-element analysis of up to 2,350 infringing combinations (47 products multiplied by 50 claims). Performing this analysis once will be challenging enough; performing it multiple times throughout discovery would be overly burdensome and unnecessary.

The most efficient way to approach these infringement analyses is to perform them once, correctly, with the assistance of experts, based on (yet-to-be-produced) documents and (yet-to-be-taken) deposition testimony from Maxim regarding the details of its products and conduct, and based on the claims as they have been construed by the Court. Recognizing that the parties' infringement

---

[27] *See* Protective Order Memo.

[28] *See* Maxim's Supplemental Responses to QUALCOMM's First Set of Interrogatories (Nos. 1-18), at 4-5.

1   and non-infringement positions will depend upon the Court's interpretation of the claims, Judge

2   Brewster has ordered that infringement expert reports will not be due until after the Court's

3   *Markman* ruling.[29] Thus, Judge Brewster has indicated that the parties' infringement analyses

4   should be informed by both the Court's claim construction and the opinions of expert witnesses.

5   Judge Brewster's efficiency-driven rationale for having infringement expert reports come post-

6   *Markman* applies with equal force to the interrogatories at issue, which require infringement

7   analyses of virtually identical scope.

8          Apart from these efficiency considerations, if Maxim's motion were granted QUALCOMM

9   also would suffer the unfairness of being forced to commit itself to positions without the benefit of

10  substantial discovery from Maxim.  QUALCOMM cannot reasonably be expected to generate a

11  comprehensive element-by-element mapping of patent claims to products and conduct when

12  QUALCOMM has not yet had the opportunity to obtain even the first wave of document and

13  deposition discovery from Maxim regarding its products and conduct.  Judge Brewster recognized

14  this fundamental problem at the parties' Status Conference:

15           Yeah.  I see that. .... Before you can actually tell [Maxim] which claims or
            issues you think are at issue, you have to know – you have to know what they're
16          doing so that you can know which conduct you think violates which claims.[30]

17  Again, the unfairness to QUALCOMM would be further exacerbated by the fact that Maxim has

18  violated the parties' Stipulated Protective Order by reneging on its agreement to allow three

19  QUALCOMM in-house attorneys access to documents containing "highly confidential" information

20  regarding Maxim's products – information that those attorneys need in order to assist QUALCOMM

21  in conducting its infringement analyses.[31]  Maxim therefore seeks to force QUALCOMM to commit

22  to positions while at the same time depriving QUALCOMM of critical information necessary to

23  fully formulate those positions.

24

25

26  [29] Lin Decl. Ex. K, at 2, 4-5.

27  [30] 8/28/03 Hearing Tr. at 33:17-21 (Lin Decl. Ex. B).

28  [31] *See* Protective Order Memo.

QUALCOMM'S OPPOSITION TO MAXIM'S MOTION
TO COMPEL NO. 1                                          9                    CASE NO. 02 CV 2429 B(JFS)

40759_2

1    Finally, the highlighted problems will not be limited to only these two Maxim contention

2  interrogatories.  QUALCOMM already has propounded contention interrogatories requesting Maxim

3  to provide a detailed mapping of its invalidity positions,[32] which Maxim has refused to answer.

4  QUALCOMM also anticipates propounding contention interrogatories requesting Maxim to provide

5  a detailed mapping of its non-infringement positions.  If QUALCOMM is compelled to disclose its

6  infringement positions now, fairness dictates that Maxim will similarly be required to disclose

7  without delay its invalidity and non-infringement positions.  Thus, should Maxim's motion to

8  compel be granted, both parties would be forced to expend significant resources responding to these

9  early contention interrogatories and repeatedly updating them before and after the *Markman* ruling

10 to account for new information developed during discovery and the Court's claim construction,

11 when those resources could be better utilized in more productive ways.  Any resulting delay in the

12 adjudication of this case also could severely prejudice QUALCOMM's ability to obtain meaningful

13 injunctive relief, given the short life-cycles of wireless chips such as those at issue here.

14    Maxim cites only one case – from a district court in Pennsylvania – in which a district court

15 judge decided to manage his case differently by allowing defendant in a patent infringement case to

16 propound early contention interrogatories regarding plaintiff's infringement positions.  While that

17 decision was certainly within the Pennsylvania district court judge's discretion, it is not persuasive

18 here, given the inefficiencies, unfairness and delay explained above, as well as Judge Brewster's

19 view of how this particular case should proceed.

20    Nor is Maxim's citation to the Northern District of California Local Patent Rules persuasive.

21 Out of the five courts in the nation having local rules that impose specific requirements for patent

22 cases,[33] the Northern District is the only one that requires plaintiff to provide an early disclosure of

23 its infringement contentions.  Furthermore, neither party advocated that the Northern District patent

24 rules be adopted here, and the Court declined to do so.  In fact, even Maxim's counsel admitted

25

26 ───────────────
[32] Lin Decl. Ex. F, at 11-12.

27 [33] The four district courts of California and the Southern District of New York.  Other district courts
       that apply general rules to patent cases have been excluded.

28
QUALCOMM'S OPPOSITION TO MAXIM'S MOTION
TO COMPEL NO. 1                          10                    CASE NO. 02 CV 2429 B(JFS)

1  during the Status Conference before Judge Brewster that the Northern District patent rules were

2  "very aggressive" and should not be adopted here.[34]  Maxim's attempt now to cherry-pick one

3  component of the Northern District rules that Maxim deems to be in its strategic self-interest should

4  be rejected.

5       **C.   MAXIM HAS FAILED TO MEET ITS BURDEN OF SHOWING HOW ANY BENEFIT**
         **FROM EARLY RESPONSES TO ITS CONTENTION INTERROGATORIES WOULD**
6        **OUTWEIGH THE PREJUDICE TO QUALCOMM.**

7       Maxim has failed to carry its burden of showing that any benefit of compelling responses to

8  its early contention interrogatories would outweigh the inefficiency, unfairness and delay outlined

9  above.  Requiring QUALCOMM to map out in detail its current infringement contentions at this

10 early stage in discovery would contribute little to the development of the case, since those positions

11 are still preliminary and could change significantly as QUALCOMM obtains discovery on Maxim's

12 products and conduct, and after the Court has interpreted the claims at the *Markman* hearing.

13 *Disclosure of QUALCOMM's current infringement positions therefore will do little to narrow the*

14 issues in the case.

15      Nor does Maxim's argument that its discovery efforts will be hampered absent an answer to

16 its contention interrogatories carry any weight.  Contrary to its suggestion, Maxim is not prevented

17 in any way from seeking discovery on the operation of chips made by QUALCOMM or third parties.

18 Maxim may take depositions, request documents, propound fact interrogatories, and propound

19 focused requests for admissions.[35]  Maxim, in fact, already has demonstrated its unfettered ability to

20 do so, having propounded 10 other interrogatories and 51 separate document requests.

21      **D.   THE INFRINGEMENT REPORT DEMANDED NOW BY MAXIM WOULD GO FAR**
         **BEYOND ANY ANALYSIS REQUIRED BY RULE 11.**
22

23      Maxim mischaracterizes the law when it states that, to satisfy its Rule 11 obligations,

24 QUALCOMM already must have conducted a detailed analysis identifying *every* Maxim product

25

26

27 [34] 8/28/03 Hearing Tr. at 30:3-8 (Lin Decl. Ex. B).

   [35] *See In re Convergent Techs. Sec. Litigation,* 108 F.R.D. at 339.
28

1   and activity that infringes *every* claim of *every* patent-in-suit.[36]  Rule 11 requires a far less

2   exhaustive analysis.  Under Rule 11, plaintiff in a patent infringement action needs to have a

3   reasonable belief that only at least *one* claim of each asserted patent is infringed by only at least *one*

4   product or activity of defendant.[37]  QUALCOMM's responses to Maxim Interrogatories Nos. 1 and 2

5   reflect that QUALCOMM has more than satisfied that Rule 11 requirement.  There is no merit to

6   Maxim's argument that QUALCOMM need not engage in any further work to develop the

7   exhaustive infringement analyses now demanded by Maxim.  Given the number of Maxim products

8   and activities that are potentially infringing, and the number of claims that are potentially infringed,

9   Maxim's requested infringement analyses would require a substantial amount of work for

10  QUALCOMM to prepare.  Again, these exhaustive analyses should be performed once, correctly,

11  with the assistance of experts, based on (yet-to-be-produced) documents and (yet-to-be-taken)

12  deposition testimony from Maxim regarding the details of its products and conduct, and based on the

13  claims as they have been construed by the Court.

14  **IV.   CONCLUSION**

15        Maxim's demand would create inefficiency, unfairness and delay.  Maxim has not carried its

16  burden of demonstrating that these problems are outweighed by any benefit from compelling

17  answers now to its premature contention interrogatories.

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26

27  [36] Maxim Memo. at 3.

28  [37] *View Eng'g, Inc. v. Robotic Vision Systems, Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000).

QUALCOMM'S OPPOSITION TO MAXIM'S MOTION
TO COMPEL NO. 1                                    12              CASE No. 02 CV 2429 B(JFS)

40759_2

1    If the Court is inclined to grant Maxim's motion, however, then such discovery should be

2    provided in both directions.  Maxim should be reciprocally ordered to provide, on the same date, the

3    invalidity analyses requested in QUALCOMM Interrogatories Nos. 13 and 14.  Maxim also should

4    expect to receive, and respond promptly to, an interrogatory demanding, for each asserted claim and

5    accused Maxim product, a detailed mapping of the elements that Maxim admits are present in its

6    products and/or activities, and the elements that Maxim denies are present.

7    Dated:  November 6, 2003                     DAY CASEBEER
                                                  MADRID & BATCHELDER LLP
8

9

10   By: _Richard C. Lin_
                         Richard C. Lin
11

12   Attorneys for Plaintiff and Counterdefendant
     QUALCOMM INCORPORATED
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORIGINAL

1  Gerald L. McMahon (SBN 036050)
   David J. Zubkoff (SBN 149488)
2  SELTZER CAPLAN McMAHON VITEK
   2100 Symphony Towers, 750 B Street
3  San Diego, CA  92101
   (619) 685-3003
4

5  Lloyd R. Day, Jr. (SBN 090875)
   James R. Batchelder (SBN 136347)
6  DAY CASEBEER MADRID & BATCHELDER LLP
   20300 Stevens Creek Blvd., Suite 400
7  Cupertino, CA  95014
   (408) 873-0110
8

9  Louis M. Lupin  (SBN 120846)
   Alexander H. Rogers  (SBN 131879)
10 Roger Martin  (SBN 195003)
   QUALCOMM Incorporated
11 5775 Morehouse Drive
   San Diego, CA  92121
12 (858) 658-1121
13

14 Attorneys for Plaintiff, QUALCOMM Incorporated

15                 UNITED STATES DISTRICT COURT

16             SOUTHERN DISTRICT OF CALIFORNIA

17 **QUALCOMM INCORPORATED,**          ) CASE NO.  02 CV 2429 BTM (JFS)
                                       )
18              Plaintiff,             )
                                       )
19      vs.                            ) **PROOF OF SERVICE**
                                       )
20 **MAXIM INTEGRATED PRODUCTS, INC.,** )
   a Delaware Corporation,             )
21                                     )
                                       )
22              Defendant              )

23                                     )
   **MAXIM INTEGRATED PRODUCTS, INC.,** )
24 a Delaware Corporation,             )
                                       )
25              Counterclaimant,       )
                                       )
26      vs.                            )
                                       )
27 **QUALCOMM INCORPORATED,**          )
                                       )
               Counterdefendant.       )
28

1    I, Justine C. Albright, the undersigned, declare under penalty of perjury of the laws of the

2    United States that I am over the age of eighteen years and not a party to this action, that I caused to be

3    served the following documents:

4        1. ·  QUALCOMM   INCORPORATED'S   OPPOSITION   TO   MAXIM

5               INTEGRATED PRODUCTS, INC.'S MOTION TO COMPEL NO. 1;

6        2.   DECLARATION OF RICHARD C. LIN IN SUPPORT OF QUALCOMM

7               INCORPORATED'S OPPOSITION TO MAXIM INTEGRATED PRODUCTS,

8               INC.'S MOTION TO COMPEL NO. 1;

9        3.   PROOF OF SERVICE

10   on the below named person(s) on November 6, 2003, by Federal Express overnight mail, pursuant to

11   which overnight mail placed for collection at designated stations in the ordinary course of business is
     deposited the same day.   The process of service above is in accordance with all parties involved.

12

13   **Chad S. Campbell, Esq.**           **Michael Fabiano, Esq.**
     **Brown & Bain**                    **Mazzarella, Dunwoody & Caldarelli LLP**
14   **2901 North Central Avenue, Suite 2000**    **550 West C Street, Suite 700**
     **Phoenix, AZ 85012**               **San Diego, CA 92101**
15

16

17       I declare under penalty of perjury under the laws of the State of California that the foregoing is

18   true and correct.   Executed on  November 6, 2003, at San Diego, California.

19

20                                  Justine C. Albright

21

22

23

24

25

26

27

28

PROOF OF SERVICE

O:\3\3164\56412\Pleads\POS.doc

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

3

PROOF OF SERVICE