















MAM

3:02-CV-2429 QUALCOMM V. MAXIM

*56*

*DECL*

1    Gerald L. McMahon (36050)
     David J. Zubkoff (149488)
2    SELTZER CAPLAN McMAHON VITEK
     2100 Symphony Towers
3    750 B Street
     San Diego, CA 92101
4    (619) 685-3003

5    Lloyd R. Day (90875)
     James R. Batchelder (136347)
6    Christopher E. Stretch (166752)
     DAY CASEBEER MADRID & BATCHELDER LLP
7    20300 Stevens Creek Blvd., Suite 400
     Cupertino, CA 95014
8    (408) 873-0110

9    Louis M. Lupin (120846)
     Alexander H. Rogers (131879)
10   Roger Martin (195003)
     QUALCOMM INCORPORATED
11   5775 Morehouse Drive
     San Diego, CA 92121
12   (858) 658-1121

13   Attorneys for Plaintiff and Counterdefendant
     QUALCOMM INCORPORATED



14

15            UNITED STATES DISTRICT COURT

16           SOUTHERN DISTRICT OF CALIFORNIA

17   QUALCOMM INCORPORATED,        02 CV 2429 B (JFS)

18          Plaintiff,         **DECLARATION OF RICHARD C. LIN IN**
                                   **SUPPORT OF QUALCOMM**
19          v.               **INCORPORATED'S OPPOSITION TO MAXIM**
                                   **INTEGRATED PRODUCTS, INC.'S MOTION**
20   MAXIM INTEGRATED PRODUCTS, INC.    **TO COMPEL NO. 1**
     a Delaware Corporation,
21                             **DATE:**   **NOVEMBER 20, 2003**
           Defendant.          **DEPT.**    **E**
22                             **TIME:**    **9:00 A.M.**
     MAXIM INTEGRATED PRODUCTS, INC.    **JUDGE:**   **HONORABLE JAMES F. STIVEN**
23   a Delaware Corporation,

24         Counterclaimant,

25          v.

26   QUALCOMM INCORPORATED,           **ORIGINAL**

27         Counterdefendant.

28

    LIN DECL. IN SUPPORT OF QUALCOMM'S         CASE NO. 02 CV 2429 B(JFS)
    OPPOSITION TO MAXIM'S MOTION TO COMPEL NO. 1    56

40761_1

1      I, Richard C. Lin, declare:

2      I am an attorney in the law firm of Day Casebeer Madrid & Batchelder LLP, counsel for

3   Attorneys for Plaintiff and Counterdefendant QUALCOMM Incorporated.  I am admitted to practice

4   law before this Court and all of the Courts of the State of California.

5      1.      I make this declaration of my own personal knowledge.  If called to testify as to the

6   truth of the matters stated herein, I could and would do so competently.

7      2.      Attached hereto as Exhibit A is a true and correct copy of Maxim's Interrogatories

8   Nos. 1-5 to QUALCOMM, dated August 14, 2003.

9      3.      Attached hereto as Exhibit B is a true and correct copy of excerpts from the transcript

10   of the parties' August 28, 2003 Status Conference before Judge Brewster.

11      4.      Attached hereto as Exhibit C is a true and correct copy of Plaintiff QUALCOMM

12   Incorporated's Response to Defendant Maxim Integrated Products, Inc.'s Interrogatories Nos. 1-3,

13   dated September 16, 2003.

14      5.      Attached hereto as Exhibit D is a true and correct copy of a letter dated September 12,

15   2003 from Chad Campbell, counsel for Maxim, to James Batchelder, counsel for QUALCOMM.

16      6.      Attached hereto as Exhibit E is a true and correct copy of a letter dated September 22,

17   2003 from Chad Campbell to James Batchelder.

18      7.      Attached hereto as Exhibit F is a true and correct copy of QUALCOMM

19   Incorporated's First Set of Interrogatories to Maxim Integrated Products, Inc., dated August 20,

20   2003.

21      8.      Attached hereto as Exhibit G is a true and correct copy of a letter dated October 1,

22   2003 from James Batchelder to Chad Campbell.

23      9.      Attached hereto as Exhibit H is a true and correct copy of a letter dated October 7,

24   2003 from Chad Campbell to James Batchelder.

25      10.      Attached hereto as Exhibit I is a true and correct copy of a letter dated October 9,

26   2003 from Richard Lin to Chad Campbell.

27      11.      Attached hereto as Exhibit J is a true and correct copy of Maxim's Request for

28   Production No. 1, dated July 30, 2003.

40761_1

1     12.     Attached hereto as Exhibit K is a true and correct copy of the Court's September 17,

2    2003 Case Management Conference Order Regulating Discover and Other Pretrial Proceedings.

3     13.     Attached hereto as Exhibit L is a true and correct copy of Local Civil Rule 33.3 from

4    the Local Rules of the United States District Courts for the Southern and Eastern Districts of New

5    York.

6     I declare under penalty of perjury under the laws of the United States that the foregoing is

7    true and correct to the best of my knowledge.

8     Signed this 5th day of November 2003.

9

10                                 Richard C. Lin

LIN DECL. IN SUPPORT OF QUALCOMM'S
OPPOSITION TO MAXIM'S MOTION TO COMPEL NO. 1     2     CASE NO. 02 CV 2429 B(JFS)

Mark C. Mazzarella (082494)
Dana J. Dunwoody (119696)
Michael D. Fabiano (167058)
MAZZARELLA, DUNWOODY & CALDARELLI, LLP
550 West "C" Street, Suite 700
San Diego, California 92101-8575
Telephone: (619) 238-4900
Facsimile: (619) 238-4959

Michael F. Bailey
Chad S. Campbell
BROWN & BAIN, P.A.
2901 North Central Avenue
Post Office Box 400
Phoenix, Arizona 85001-0400
Telephone: (602) 351-8000
Facsimile: (602) 648-7000

Attorneys for Defendant/Counterclaimant
MAXIM INTEGRATED PRODUCTS, INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUALCOMM INCORPORATED,<br><br>Plaintiff,<br><br>vs.<br><br>MAXIM INTEGRATED PRODUCTS, INC.,<br><br>Defendant. | No. 02 CV 2429 BTM (JFS)<br><br>**MAXIM'S INTERROGATORIES NOS. 1-5 TO QUALCOMM** |
| MAXIM INTEGRATED PRODUCTS, INC.,<br><br>Counterclaimant,<br><br>vs.<br><br>QUALCOMM INCORPORATED,<br><br>Counter-defendant. | |

1    Pursuant to Fed. R. Civ. P. 33, Maxim Integrated Products, Inc. requests that Qualcomm

2  Incorporated answer separately and fully each of the following interrogatories in writing and

3  under oath within thirty (30) days of the date of service of this request

4                                    **DEFINITIONS**

5      A.    "Qualcomm" includes (i) Qualcomm Incorporated; (ii) any and all predecessor or

6  successor companies, corporations, divisions, or business entities of Qualcomm Incorporated;

7  (iii) any subsidiary, division, company, related corporation or other business entity owned in

8  whole or in part by Qualcomm Incorporated (at any time); (iv) any parent, related corporation or

9  other business entity for which the ownership is or was in common with the ownership of

10  Qualcomm Incorporated (in whole or in part) at any time; (v) any person who acts or has acted

11  for any of the foregoing entities.

12      B.    "Maxim" includes Maxim Integrated Products, Inc. and any person who acts or

13  has acted on its behalf.

14      C.    The term "'063 Patent" means United States Patent No. 5,722,063 entitled

15  "Method and Apparatus for Increasing Receiver Immunity to Interference."

16      D.    The term "'341 Patent" means United States Patent No. 5,732,341 entitled

17  "Method and Apparatus for Increasing Receiver Immunity to Interference."

18      E.    The term "'473 Patent" means United States Patent No. 5,452,473 entitled

19  "Reverse Link, Transmit Power Correction and Limitation in a Radiotelephone System."

20      F.    The term "'408 Patent" means United States Patent No. 5,590,408 entitled

21  "Reverse Link, Transmit Power Correction and Limitation in a Radiotelephone System."

22      G.    The term "'220 Patent" means United States Patent No. 5,655,220 entitled

23  "Reverse Link, Transmit Power Correction and Limitation in a Radiotelephone System."

24      H.    The term "Patents-In-Suit" means one or more of the '063 Patent, the '341 Patent,

25  the '473 Patent, the '408 Patent, and the '220 Patent.

26      I.    The term "Foreign Counterpart" means any patent issued to Qualcomm or any

27  patent applications by Qualcomm in any country other than the United States, in which

28

MAXIM'S INTERROGATORIES NOS. 1-5 TO QUALCOMM          - 2 -                     No. 02 CV 2429 BTM (JFS)

Ex. A-2

1   Qualcomm claims, mentions, or discusses, in whole or in part, the subject matter of any of the

2   claims of the Patents-In-Suit.

3       J.      "Document" has the same meaning as in Fed. R. Civ. P. 34.  By way of illustration

4   and not limitation, documents include e-mail and other information in electronic form including

5   electronic or computerized data compilations.  As used herein, document includes all drafts,

6   versions, or copies of an item that differ in any way from each other (whether or not sent or

7   received).

8       K.      "Maxim Accused Product or Method" means any product or method employed,

9   made, designed, sold or offered for sale by Maxim that Qualcomm contends infringes the Patents-

10  in-Suit (whether by direct, contributory, or inducement of infringement).

11      L.      The term "sales" means deliveries to any entity besides Qualcomm or the taking of

12  an order from any entity, whether or not money exchanged hands.

13      M.      The term "communication" means an oral, graphic, demonstrative, telephonic,

14  verbal, or like conveyance of information, excluding documents.

15      N.      As used herein, "person" means both natural persons and any form of business

16  entity.

17      O.      "Qualcomm Device" means any product, designed, made, offered for sale and/or

18  sold by Qualcomm, at any time, that can be used in the "transmission, reception and processing of

19  radio signals by wireless telephones" (as that phrase is used in paragraph 12 of the Second

20  Amended Complaint) where one or more of the following conditions is met:  (a) the device

21  embodies any claim of the Patents-In-Suit; (b) the manufacture, sale, offer for sale or use of the

22  device practices any claim of the Patents-In-Suit (whether by direct, contributory or inducement

23  of infringement); (c) the combination of the device with other "integrated circuits or modules for

24  use in wireless telephones" (as that phrase is used in paragraph 11 of the Second Amended

25  Complaint) practices any claim of the Patents-In-Suit.

26      P.      The use of the singular form of any word includes the plural and vice versa.

27

28

## INSTRUCTIONS

1.     A reference to a corporation or other entity shall be construed to include the persons or entities through which the referenced corporation or other entity acts.

2.     If the complete answer to an interrogatory is not known to Qualcomm, Qualcomm shall answer the interrogatory to the extent possible and indicate what parts or portions of the interrogatory Qualcomm is unable to answer.

3.     If Qualcomm objects to or otherwise refuses to answer any portion of an interrogatory, it shall (1) state the objection or reason for such refusal, and (2) provide all information called for by that portion of the interrogatory to which it does not object to or to which it does not decline to answer.

4.     Whenever an interrogatory calls for the identity of a document or nonwritten communications claimed by Qualcomm to be privileged, include in the statement of the identity of such document or nonwritten communication the fact of such claim of privilege and the basis asserted for such claim. As to any such document state: (1) the reason for withholding it; (2) the author of the document; (3) each individual or other person to whom the document indicates the original or a copy thereof was sent; (4) each individual or other person to whom the document has been given or shown; (5) the date of the document; and (6) the general subject matter of the document.

5.     These interrogatories seek answers current to the date of response, and further shall be deemed to be continuing under Federal Rule of Civil Procedure 26(e), so that any additional information referring or relating in any way to these interrogatories which Qualcomm acquires or which becomes known to Qualcomm up to and including the time of trial shall be furnished to Maxim promptly after being so acquired or known by Qualcomm.

6.     The words "and" and "or" shall be construed conjunctively or disjunctively, whichever makes the request herein more inclusive.

7.     The words "any" and "each" shall be construed to encompass "any," "any one of," "each," or "all," whichever makes the request herein more inclusive.

8.      Where identification of a natural person is requested, please state the person's name, present residence and business address, present employer and position held, and, if the person is not an employee of Qualcomm, the person's present home address and telephone number and business telephone number.

9.      Where identification of a document is requested, please state the date of the document, identify the author, specify the type of document (e.g., letter, memorandum, telegram, chart, etc.) or some other means of identifying it, identify each of the recipients, specify its present location and identify its custodian, and, if a document was but is no longer in Qualcomm's possession or control, please state what disposition was made of it and when.

## INTERROGATORIES

**Interrogatory No. 1:** Identify each "Maxim Accused Product or Method" and identify the claims of the Patents-In-Suit allegedly infringed for each identified product and/or method listing which claims of the Patents-In-Suit are allegedly infringed by which identified products and/or methods.

**Answer:**

**Interrogatory No. 2:** With specific reference to actual documents, drawings, photographs, and/or sketches of the Maxim Accused Products or Method, using reference numerals directed to portions of actual documents, drawings, photographs, and/or sketches, describe in detail how each and every claim of the Patents-In-Suit for which infringement is alleged is infringed, and also describe how each claim is infringed (e.g. directly, contributorily, by inducement; and literally, or under the doctrine of equivalents).

**Answer:**

**Interrogatory No. 3:** For each claim of the Patents-In-Suit that Qualcomm contends is infringed by Maxim, explain Qualcomm's proposed construction of the claim, claim limitation by claim limitation, and include in the explanation identification of any special or uncommon meanings of words or phrases in the claim, all references from the specification that support, describe, or explain each element of the claim; all material in the prosecution history that describes or explains

1    each element of the claim; and any extrinsic evidence that supports the proposed construction of the

2    claim, including but not limited to, expert testimony, inventor testimony, dictionary definitions and

3    citations to learned treatises, as permitted by law.

4       **Answer:**

5       **Interrogatory No. 4:** Separately, for each claim of the Patents-In-Suit, state the date when

6    and the location where the subject matter was first conceived, first described in a document, and first

7    reduced to practice, both actually and constructively; and identify each person or persons who

8    contributed to the conception or the reduction to practice of the claimed subject matter or has

9    contemporaneous knowledge of such conception or reduction to practice, describe his or her

10    contribution, identify each such person's employment status at the time of such contribution, state

11    whether each such person is currently employed by Qualcomm, and identify any and all documents

12    showing or corroborating the conception and reduction to practice and all documents Qualcomm

13    contends evidence diligence towards reduction to practice.

14       **Answer:**

15       **Interrogatory No. 5:** With respect to each claim of the Patents-In-Suit, provide the dates and

16    state the circumstances of the first public use, disclosure to third parties, commercial use, offer for

17    sale, or sale of any product embodying the claimed invention; identify all persons with knowledge of

18    such dates and circumstances; and identify any and all documents which relate, reflect, or refer to

19    any of the facts or other matters set out in the answer to this interrogatory.

20       **Answer:**

21

22    Dated: August 14, 2003.

23                               BROWN & BAIN, P.A.

24

25                           By *Chad S. Campbell*

26                              Michael F. Bailey

27                              Chad S. Campbell

                                2901 North Central Avenue

28                              Post Office Box 400

                                Phoenix, Arizona 85001-0400

1                                             Mark C. Mazzarella

2                                             Dana J. Dunwoody
Michael D. Fabiano

3                                             MAZZARELLA, DUNWOODY &
CALDARELLI, LLP

4                                             550 West "C" Street, Suite 700
San Diego, California  92101-8575

5

6                                             Attorneys for Maxim Integrated Products, Inc.

7   238998_1

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

I am a citizen of the United States.  My business address is Brown & Bain, P.A., 2901 North Central, Suite 2000, Phoenix, Arizona 85012.  I am over 18 years of age, and not a party to the within action.  I am readily familiar with the business practice at my place of business for collection and processing of correspondence for personal delivery, for mailing with United States Postal Service, for facsimile, and for overnight delivery services.

On August 14, 2003, I caused a copy of the following document(s):

**MAXIM'S INTERROGATORIES NOS. 1-5 TO QUALCOMM**

to be served on the interested parties in this action as follows:

| | |
|---|---|
| James R. Batchelder, Esq.<br>Day Casebeer Madrid & Batchelder LLP<br>20300 Stevens Creek Blvd., Suite 400<br>Cupertino, California  95014<br>(408) 873-0110 (Main)<br>(408) 873-0220 (Fax) | Attorneys for Defendant<br>QUALCOMM INCORPORATED |
| Gerald L. McMahon, Esq.<br>David J. Zubkoff, Esq.<br>Seltzer Caplan McMahon Vitek<br>2100 Symphony Towers<br>750 B Street<br>San Diego, California 92101<br>Telephone: (619) 685-3003<br>Facsimile: (619) 685-3100 | Attorneys for Defendant<br>QUALCOMM INCORPORATED |
| Louis M. Lupin, Esq.<br>Alexander H. Rogers, Esq.<br>Roger Martin, Esq.<br>QUALCOMM Incorporated<br>5775 Morehouse Drive<br>San Diego, California 92121<br>Telephone: (858) 658-1121<br>Facsimile: (858) 658-2100 | Attorneys for Defendant<br>QUALCOMM INCORPORATED |

☒ (BY FACSIMILE) Such document was faxed to the facsimile transmission machine with the facsimile machine number(s) stated above.  Upon completion of the transmission, a transmission report was received showing the transmission was complete and without error.

☒ (BY MAIL) Such correspondence was deposited, postage fully paid, with the United States Postal Service on the same day in the ordinary course of business.

☐ (PERSONAL HAND DELIVERY) Personal to the addressee(s) stated above.

1    I declare that I am employed in the office of a member of the bar of this Court at whose

2  direction the service was made.

3    I declare under penalty of perjury under the laws of the United States that the foregoing is

4  true and correct. Executed on August 14, 2003 at Phoenix, Arizona.

5

6                        *Mary Wadsworth*

7                     Mary Wadsworth

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ex. A-9

# ORIGINAL

```
 1              UNITED STATES DISTRICT COURT

 2            SOUTHERN DISTRICT OF CALIFORNIA

 3

 4  QUALCOMM, INC.,              )  Case No. 02CV2429-BTM(JFS)
                                 )
 5            Plaintiff,         )  San Diego, California
                                 )
 6  vs.                          )  Thursday
                                 )  August 28, 2003
 7  MAXIM INTEGRATED PRODUCTS,   )  9:00 a.m.
                                 )
 8            Defendant.         )
    _____)

 9

10            TRANSCRIPT OF STATUS CONFERENCE
        BEFORE THE HONORABLE RUDI M. BREWSTER
11            UNITED STATES DISTRICT JUDGE

12  APPEARANCES:

13  For the Plaintiff:        JAMES R. BATCHELDER, ESQ.
                              Day, Casebeer, Madrid &
14                             Batchelder, LLP
                              20300 Stevens Creek Boulevard
15                            Suite 400
                              Cupertino, California 95014
16                            (408) 873-0110

17                            DAVID ZUBKOFF, ESQ.
                              2100 Symphony Towers
18                            750 'B' Street
                              San Diego, California 92101
19                            (619) 685-3003

20                            ROGER MARTIN, ESQ.
                              Qualcomm, Incorporated
21                            5775 Morehouse Drive
                              San Diego, California 92121
22                            (858) 845-3536

23

24
    Proceedings recorded by electronic sound recording;
25  transcript produced by transcription service.
```

Ex. B-1

Echo Reporting, Inc.

28

1 issues.  It was in a pharmaceutical product.  I didn't take

2 chemistry either.  And they started with tutorial with me,

3 explaining to me the difference between an atom and a

4 molecule.  And we started at the bottom, and we worked up

5 from that.

6          And by the time the case was over, we were

7 disposing of the issues in the patent and the pharmaceutical

8 product, and we were learning all kinds of very esoteric

9 stuff on DNA, RNA and all kinds of stuff.  I mean, I was

10 really flying high by the end of that case, but I was

11 starting in the shell when it started.

12          And I'm similarly situated in these electronic

13 cases.  We've done some of that.  I mean, I've got a very,

14 very basic understanding about base stations and SIDs and

15 nonSIDs and stuff like that.  But the idea of tutorial

16 really doesn't so much involve knowing whether or not there

17 has been infringement of a patent.  We're not really

18 examining the patent to see whether it's been infringed or

19 not.  We're not identifying the patent to see which claims

20 are going to be an issue.  That's not my focus in a

21 tutorial.

22          So -- but that still may be correct.  What you say

23 may still be valid, that if we at least knew where the

24 ultimate issues were going to go, we could tailor the

25 tutorial more efficiently toward those areas and not

**Ex. B-2**

29

1 splatter it all over the whole world when we're going to be

2 concerning one particular area.  And that still may be a

3 valid concern.

4          If that's the concern, then the question would be

5 in my mind, when -- when would the case be in a condition

6 where we could have a Markman hearing?  Is June set because

7 of the legal positions of the parties and understanding the

8 facts of the litigation?  Do you need that time to flesh it

9 out before you have the Markman?

10          MR. CAMPBELL:  I think June got suggested because

11 that was about the period in the middle of where the parties

12 were suggesting the Markman hearing should happen under

13 their competing proposals to Magistrate Judge Stiven.

14          From our point of view, we don't mind the Markman

15 hearing happening earlier in the case, provided we can get

16 discovery of claims construction positions and infringement

17 contentions ahead of time.  We -- in our proposal, we

18 actually modified the California rules, which provide for --

19 the Northern District California rules, which provide for

20 separate tracks of tracks of discovery, one related to

21 Markman type discovery and then the second track related to

22 everything else in the case.

23          But we were proposing that the parties exchange

24 their views based on where they thought their infringement

25 contentions and invalidity contentions would lead the fight

**Ex. B-3**

30

1 about claims construction.  Get that all out on the table

2 and then have the Markman hearing.

3         Quite frankly, the time table that's laid out in

4 the Northern District of California is very aggressive

5 compared to other places in the country, in my experience,

6 and we proposed a slightly modified schedule in the sense

7 that it was more relaxed and didn't have things happening

8 quite so quickly.

9         But the logic behind our proposal was, let's have

10 the Markman hearing after we know where the fight is going

11 to be.  If the Court wanted to do that sooner rather than

12 later, we don't have an objection to that, provided we can

13 get the information we need to have our hearing be

14 meaningful.

15         THE COURT:  Yeah.  Well, it is true -- it is true

16 that when we have the Markman hearing, we do need to know

17 the patents at issue and the claims of the issue of the

18 patents which are going to be at issue.  Because the whole

19 purpose of Markman is to rewrite, if necessary, the claims

20 and each of the elements of the claims, if necessary, into a

21 jury instruction, which we'll give to the jury, and tell

22 them, "This is the translation of that patent.  If you don't

23 understand the left column, take a look at the right

24 column."

25         The instruction will be in two columns, a left and

Echo Reporting, Inc.

**Ex. B-4**

31

1 right.  Left would be verbatim, claim by claim, element of

2 each claim by element of each claim.  And on the

3 corresponding line on the right half of the paper, the same

4 claim or the same element written in language that we've

5 together determined are faithful to the patent, but perhaps

6 easier for 12th graders to understand.  I only say that

7 because empirically juries are 12th graders.  Empirically,

8 on the average.

9 　　　　　So if we don't know that -- we can't really have a

10 Markman if we don't know which claims and which elements are

11 going to be an issue.  We can't really have a Markman.

12 　　　　　MR. BATCHELDER:  That's certainly correct.  And

13 Qualcomm's proposal was to set it up in exactly the manner

14 that your Honor proposed, that is that Qualcomm, after

15 taking some initial discovery -- and we've already

16 propounded document requests we think will go a long way

17 towards answering these questions.  We will be able to get a

18 lay of the land of Defendant's conduct, figuring out which

19 claims are implicated, and then make a statement to

20 Defendants that these are the claims that are at issue in

21 the case.

22 　　　　　And I think that is the work that needs to be done

23 in advance in order to sort of lay the ground work for a

24 Markman.  I think --

25 　　　　　THE COURT:  Okay.  I can see now from what both of

32

1 you have said that the problem isn't our calendars.  The

2 problem is the issues that are going to be exposed.  And you

3 have to expose these issues substantively before we can do

4 it.  Never mind -- even if we were available tomorrow, if we

5 were available from now on until hell froze over, the

6 problem that's going to hold it back is getting the case to

7 the point we're looking at in Markman.

8        And it is true that I do prefer having a tutorial

9 close to the Markman hearing.  In this other case where I

10 had so long a tutorial, since I inherited the case

11 downstream somewhat, it was handled a little differently.

12 And what I was facing was cross-motions for summary

13 judgment.  It wasn't a Markman hearing.  It was cross-

14 motions for summary judgment.

15        And this is not that situation.  I'm not facing

16 that.  So I think that what you've done so far is the way to

17 go.  Judge Stiven is working with you to try to get your

18 case to the point of knowing what you're accusing so that

19 you can know what you're defending.  And that's what he's

20 working on his order to get you in a position for, isn't it?

21        MR. BATCHELDER:  That's our hope.  We do have one

22 conceptual disagreement, and it's not clear to me whether

23 Judge Stiven is going to include these dates in the schedule

24 or not.  But both parties agree that it makes sense for --

25 at some point for Qualcomm to provide a chart to Maxim

**Ex. B-6**

33

1  saying -- basically mapping the limitations of each of the

2  claims at issue to the elements of the accused products and

3  saying, "Here's a one-to-one mapping that really shows why

4  we believe there's infringement here."

5          THE COURT:  That would be greatly helpful.

6          MR. BATCHELDER:  I think it would be very helpful.

7  And also, the parties agree that Maxim would do the same

8  thing with respect to prior art to the extent that they have

9  invalidity contentions, provide sort of a mapping.

10         It's Qualcomm's position that it really makes more

11  sense to do that after the claims have been construed.  So

12  your Honor can tell us what the claims mean, and then we can

13  take those construed claims and map them to the products.  I

14  don't think it makes a lot of sense to do it before the

15  claims are construed because then we'd have to do it all

16  over again after the Markman.

17         THE COURT:  Yeah.  I see that.  But before you --

18  you have two levels of problems.  Before you can actually

19  tell them which claims or issues you think are at issue, you

20  have to know -- you have to know what they're doing so that

21  you can know which conduct you think violates which claims.

22         MR. BATCHELDER:  That way I can identify the

23  claims that I believe are implicated.  That's right.  But I

24  think the more detailed mapping --

25         THE COURT:  Well, the moment you get to that

Echo Reporting, Inc.

**Ex. B-7**

34

1 point, as far as I'm concerned, we should be able to handle

2 a Markman hearing.

3          MR. BATCHELDER:  I agree.

4          THE COURT:  When do you think you'll be at that

5 point?

6          MR. BATCHELDER:  Our proposal was exactly what

7 Magistrate Judge Stiven adopted, which was June.  I think we

8 could do it earlier.  But I think that would give plenty of

9 time to take the initial round of discovery and then have

10 the expert, the Markman expert reports generated and have

11 the Markman expert discovery taken before the hearing.

12 So --

13          THE COURT:  Yeah.  I would like to have the

14 Markman hearing accomplished before you have to depose your

15 experts because once you know what the Court is going to

16 tell the jury that the patent claims, then you can work with

17 your expert and have you expert honed in on why the patent

18 does or doesn't -- or the conduct does or doesn't infringe

19 the patent.  Because you know what the issue is going to be.

20 You know what the patent is going to be interpreted to mean.

21          MR. BATCHELDER:  I certainly agree with that.

22 What I was proposing was just time in advance of the Markman

23 for the Markman expert discovery.  Certainly as to

24 infringement and validity, I think it only makes sense to

25 have those expert reports come after the Markman ruling.

**Ex. B-8**

52

1 helpful to make preliminary charts of what you think the --
2 you need from them and they need of you to give lawyers
3 an -- because you have to meet and confer.  So it's nothing
4 more than a crutch to a meet-and-confer conference, if you
5 get right down to it.

6          You have to meet and confer on discovery, and if
7 you don't, theoretically you're not even supposed to bring a
8 motion to a magistrate court unless you've met and
9 conferred.  So whether you do it with a chart and a graph or
10 not, I don't care.  I think you're talking about meet and
11 confer, frankly.

12          MR. BATCHELDER:  Well, there's a real issue on the
13 table, which is that Maxim must propounded right out of the
14 box interrogatories asking for these claim charts, for
15 example.  And so without the benefit of a Markman --

16          THE COURT:  You mean wanting to know what you're
17 claiming that they're doing?

18          MR. BATCHELDER:  They want a one-to-one mapping of
19 claim element to accused product.  Now, I haven't taken
20 discovery of what they're doing, and I don't have the
21 benefit of a Markman ruling.  I just -- it feels to me like
22 it doesn't make sense to do that kind of mapping this early
23 in the case.

24          I'm certainly willing to do it if your Honor
25 believes it would be productive, but I think it would be

53

1 more productive to exchange such things after Markman.

2       MR. CAMPBELL:  Your Honor, could I address that

3 point just briefly?

4       THE COURT:  Yeah, but before you do -- and I'll

5 let you do that, but let me just also reflect on this.

6 Please be gentle because the best thing that the good Lord

7 gave to the District Court in the last 50 years was the

8 magistrate court.

9       And I don't want us to pull me down into the

10 magistrate court because I don't want to be in a magistrate

11 court.  And I don't want to make any rulings or any remarks

12 this morning that's going to set some discovery criterion in

13 this case because that's the magistrate's court world that

14 he lives in.

15       You know, they do that day in and day out, and

16 they're much better at it than I am.  I don't do it.  Thank

17 God I don't have to do that.  And I don't want to start

18 doing it now.  And with that comment, what do you want to

19 say?

20       MR. CAMPBELL:  Only this, that the Federal Circuit

21 has made clear that under Rule 11, before a party can bring

22 a patent case, they need to have a basis to map the accused

23 product to each and every element of a claim.

24       And our discovery is propounded to find out what

25 their Rule 11 basis for having sued us in the first place

54

1 is.  We've already heard today a statement that discovery is

2 needed to figure out whether Maxim is a direct infringer.

3 We don't think that we are, but that's a signal right there

4 that there is no Rule 11 basis for a charge of direct

5 infringement today.

6        That leaves us in the box indirect infringement,

7 and we quite frankly think we're entitled to know why they

8 think they have a basis to sue us in the first place.

9        THE COURT:  Well, you know, I'm aware of that, and

10 that's why I said, to a certain extent, it's been my

11 observation that in spite of all these fancy rules, it's a

12 very seldom -- it's a rare lawsuit when there's no fishing

13 being done.  I mean, to a certain extent, the filing fee for

14 a complaint is a form of a fishing license.

15        And I feel that in 90-percent of the lawsuits that

16 are filed, there's a little fishing going on.  And there's

17 some smoke, and they may know there's a little fire burning,

18 but they want to see whether there's a lot more fire than is

19 apparent to them from the surface.

20        So they go into discovery, and they find out --

21 well, lo and behold, they find out a lot about it.  You

22 know, it happens all the time.  You're too young to remember

23 this, but a number of years ago, probably 40 years ago,

24 there was a lawsuit in Orange County against the Ford Motor

25 Company arising out of the Pinto car, which had a problem of

55

1 fire and explosions in rear-end collisions.

2        And the suit was filed, and it was in trial, and
3 I'm not even sure that there was a claim for punitive
4 damages when the suit was filed.  I'm not sure about that.
5 I don't remember.  There might have been, but I'm not sure
6 about it.

7        But in the trial, the parties uncovered a
8 memorandum written by an engineer for Ford to higher
9 management telling them that, pursuant to their request, he
10 had run an analysis of the claims that could be expected to
11 be filed over the next 10 or 15 years against the Ford
12 Pinto are for injuries and death arising out of explosions
13 on rear-end collisions.  And how much those cases would cost
14 to process legally and to settle them or to suffer judgment
15 on them over a period of time.

16        And I think that the memo concluded by saying that
17 they actually really figured out that it probably would be
18 an expense to be anticipated in the neighborhood of $120.
19 million, something like that.

20        Well, that was produced during the trial.  They
21 didn't have any idea when they filed the lawsuit that there
22 had been that kind of analysis by the defendant on this
23 Pinto.  Because the defense was, you know, it was just an
24 unexpected, unforeseeable -- it wasn't even a defect.

25        So the court permitted the plaintiff to recess the

56

1  trial.  The jury was in place.  They'd been trying it for

2  weeks, actually.  Recessed the case for a period of time.  I

3  think it was months.  Took some more discovery, deposed all

4  these people that were involved in this memo.  Came back and

5  finished the trial, and they got a verdict for punitive

6  damages of $120 million.  Surprise.

7          So there's -- that's an example of things happen.

8  You never know all about your case when you file a

9  complaint.  So what I'm saying, to a certain extent, there's

10 always fishing going on.  But it is true -- the Federal

11 Circuit is not the only circuit court that said you've got

12 to know what your case is about before you file a lawsuit.

13 We're not going to be a forum for fishing expeditions.

14          As a matter of fact, the Securities & Exchange --

15 the Congress passed an anti -- what's the name of that law

16 firm?

17          MR. CAMPBELL:  Milberg, Weiss?

18          THE COURT:  Milberg, Weiss.  The Milberg, Weiss

19 statute was passed.

20          MR. CAMPBELL:  The P.S. --

21          THE COURT:  It's been lovingly given their moniker

22 on the statute, supposedly to stop Milberg, Weiss from

23 filing these strike suits against corporations when they

24 really didn't have an ounce of information.  They'd just

25 file a lawsuit and then immediately start taking

**Ex. B-13**

57

1  depositions.

2         And they made a rule that the defendant could file

3  a 12(b)(6), and there would be no discovery until after that

4  had been ruled on.  They had to have enough to survive a

5  12(b)(6).  Well, that's basically what you're doing here.

6         MR. CAMPBELL:  Not really.  And let me be clear

7  about that.  We don't object to doing discovery.  We're not

8  trying to stop it from our end.  We just want to know what

9  the plaintiffs believe is the basis for accusing us of

10 infringement.  And we'd like to get that as soon as we can.

11 That's the purpose of our discovery being propounded to

12 them.

13        And for practical purposes, your Honor, we are

14 just fine, given the Court's inclination to leave this to

15 regular discovery devices, to do our best to meet and confer

16 with the other side and see how we go.

17        THE COURT:  Well, let me suggest this.  Bring this

18 problem that you're exposing to me, bring it to Judge

19 Stiven.  I shouldn't single them out, but he is similarly

20 qualified on civil cases.  Extremely well qualified.  And

21 there's nobody I can really think of that can better handle

22 these problems than Judge Stiven.  So why don't you, if you

23 can, broach it with him.

24        There's a line -- I sense that there's a line that

25 has to be drawn because I have not seen a case yet that

**Ex. B-14**

58

1  didn't learn something after the case was filed.  You just

2  have to have a threshold of something before you file.  And

3  sometimes finding that threshold takes a little skill.  And

4  I'd rather defer that to Judge Stiven.

5          MR. CAMPBELL:  Understood.

6          THE COURT:  All right.  Is there anything else we

7  need to cover this morning, do you think?

8          MR. BATCHELDER:  No, sir.

9          THE COURT:  How about you, Mr. Gillespie?  Is

10 there anything that you need?

11         MR. GILLESPIE:  No, I don't think so.

12         THE COURT:  All right.  Your case is the one

13 that's not at issue because you haven't served that yet.  Is

14 that right, Mr. Batchelder?

15         MR. BATCHELDER:  Correct.

16         THE COURT:  So let's just defer that case and see

17 what happens.  Can I ask counsel on that case to just alert

18 the case -- alert the Court if we need to start working on

19 that case.  And I'm not going to consolidate that case at

20 this time.  But will you alert me if there's something that

21 has to be done on that?  And we'll just sit on it.

22         If you need more orders of extending time, we'll

23 sign them.  As long as I'm satisfied that you're working

24 toward trying to settle the case.

25         MR. BATCHELDER:  That's fine.  And if we do serve

59

1  the complaint, I'll certainly let you know that as well.

2  THE COURT:  All right.  I appreciate that.  Okay.

3  MR. BATCHELDER:  Thank you very much, your Honor.

4  THE COURT:  Thank you all for being available on

5  such very short notice.  I want to assure you that I'm very

6  pleased to have been assigned these cases, and we'll work

7  them out.

8  MR. CAMPBELL:  Appreciate your time.

9  THE COURT:  Okay.

10  MR. GILLESPIE:  Thanks, your Honor.

11  THE COURT:  Thank you all.

12  (Proceedings recessed.)

13

14

15  I certify that the foregoing is a correct

16  transcript from the electronic sound recording of the

17  proceedings in the above-entitled matter.

18

19  _____         _9-2-03___
   Transcriber                              Date

20

   FEDERALLY CERTIFIED TRANSCRIPT AUTHENTICATED BY:

21

22  _____
   L.L. Francisco, President
23  Echo Reporting, Inc.

24

25

Echo Reporting, Inc.

**Ex. B-16**

1   Gerald L. McMahon (36050)
    David J. Zubkoff (149488)
2   SELTZER CAPLAN McMAHON VITEK
    2100 Symphony Towers
3   750 B Street
    San Diego, CA  92101
4   (619) 685-3003

5   Lloyd R. Day (90875)
    James R. Batchelder (136347)
6   DAY CASEBEER MADRID & BATCHELDER LLP
    20300 Stevens Creek Blvd., Suite 400
7   Cupertino, CA 95014
    (408) 873-0110
8
    Louis M. Lupin (120846)
9   Alexander H. Rogers (131879)
    Roger Martin (195003)
10  QUALCOMM INCORPORATED
    5775 Morehouse Drive
11  San Diego, CA  92121
    (858) 658-1121
12
    Attorneys for Plaintiff and Counterdefendant
13  QUALCOMM INCORPORATED

14                  UNITED STATES DISTRICT COURT

15                SOUTHERN DISTRICT OF CALIFORNIA

16
    QUALCOMM INCORPORATED,              | 02 CV 2429 B (JFS)
17
                    Plaintiff,          | **PLAINTIFF QUALCOMM INCORPORATED'S**
18                                      | **RESPONSE TO DEFENDANT MAXIM**
          v.                            | **INTEGRATED PRODUCTS, INC.'S**
19                                      | **INTERROGATORIES NOS. 1-3**
    MAXIM INTEGRATED PRODUCTS, INC.
20  a Delaware Corporation,

21                    Defendant.

22
    MAXIM INTEGRATED PRODUCTS, INC.
23  a Delaware Corporation,

24                    Counterclaimant,

25        v.

26  QUALCOMM INCORPORATED,

27                    Counterdefendant.

28

2903_7

QUALCOMM'S RESPONSE TO MAXIM'S INTERROGATORIES
NOS. 1-3                                              CASE NO. 02 CV 2429 B (JFS)

Ex. C-1

1    Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff QUALCOMM, Inc.

2    ("QUALCOMM") responds as follows to Defendant Maxim Integrated Products, Inc.'s ("Maxim")

3    Interrogatories Nos. 1-3:

4    **I.   GENERAL RESPONSES**

5    **1.**   QUALCOMM's responses to Maxim's Interrogatories Nos. 1-3 are made to the best

6    of QUALCOMM's present knowledge, information, and belief.  Said responses are at all times

7    subject to amendment and supplementation, should future investigation indicate that amendment or

8    supplementation is necessary.  QUALCOMM expressly reserves the right to rely upon subsequently-

9    discovered information or documents as well as information or documents omitted or incorrectly

10   understood as a result of mistake or inadvertence. QUALCOMM undertakes no obligation, however,

11   to supplement these responses other than as required by the Federal Rules of Civil Procedure and the

12   Court's Local Rules.

13   **2.**   QUALCOMM's responses to Maxim's Interrogatories Nos. 1-3 are made according

14   to information currently in QUALCOMM's possession, custody, and control.

15   **3.**   To the extent that QUALCOMM responds to Maxim's Interrogatories Nos. 1-3 by

16   stating information that it deems to embody material that is private, business confidential,

17   proprietary, trade secret or otherwise protected from disclosure pursuant to Federal Rule of Civil

18   Procedure 26(c)(7) or Federal Rule of Evidence 501, QUALCOMM will respond pursuant to the

19   terms of the Stipulated Protective Order agreed to by QUALCOMM and Maxim and entered by the

20   Court on August 14, 2003.

21   **4.**   QUALCOMM reserves the right to object to or otherwise question the competency,

22   relevance, materiality, privilege or admissibility of any document or thing, whether from this

23   *Response to Maxim's Interrogatories Nos. 1-3 or otherwise, that is produced as evidence in any*

24   subsequent proceeding or trial in this or any other action for any purpose whatsoever.

25   **5.**   QUALCOMM reserves the right to object on any ground at any time to additional

26   interrogatories that Maxim may propound involving or relating to the same subject matter as

27   Maxim's Interrogatories Nos. 1-3.                      **Ex. C-2**

28

## II.   GENERAL OBJECTIONS

QUALCOMM makes the following objections, whether or not separately set forth in its responses to Maxim's Interrogatories Nos. 1-3, to each and every definition and interrogatory made in Maxim's Interrogatories Nos. 1-3:

1.     QUALCOMM objects to Maxim's introductory instructions and Interrogatories Nos. 1-3 to the extent they seek to impose obligations on QUALCOMM beyond those imposed by the Federal Rules of Civil Procedure, the Local Rules of the Southern District of California, or any scheduling or trial orders to be issued by the Court in this case.

2.     QUALCOMM objects generally to Maxim's Interrogatories Nos. 1-3 insofar as they seek information protected from disclosure by the attorney-client privilege and/or the work product doctrine. Such information will not be produced in response to Maxim's Interrogatories Nos. 1-3, and any inadvertent production thereof shall not be deemed a waiver of any privilege or work product rights with respect to such information.

3.     QUALCOMM objects to the introductory definitions to Maxim's Interrogatories Nos. 1-3 to the extent said definitions purport to enlarge, expand or alter in any way the plain meaning and scope of any specific interrogatory on the ground that such enlargement, expansion, or alteration renders said interrogatory vague, ambiguous, unintelligible, overly broad, unduly burdensome and uncertain.

4.     QUALCOMM objects to Maxim's Interrogatories Nos. 1-3 as overly broad, oppressive, and burdensome to the extent that the likely benefit to Maxim of obtaining the information or documents is outweighed by the burden imposed on QUALCOMM to prepare a response.

5.     QUALCOMM objects to Maxim's Interrogatories Nos. 1-3 to the extent that the information requested may be derived or ascertained from the business records of QUALCOMM, including documents produced in this action, and the burden of deriving or ascertaining this information is substantially the same for defendant as it is for QUALCOMM.

6.     QUALCOMM objects to the term "Foreign Counterpart," as that term is defined in Paragraph (I) of Maxim's definitions, on the grounds that said definition is vague, ambiguous, overly

QUALCOMM'S RESPONSE TO MAXIM'S INTERROGATORIES NOS. 1-3

2

CASE NO. 02 CV 2429 B (JFS)

**Ex. C-3**

1  broad, unduly burdensome, and may call for information not reasonably calculated to lead to the

2  discovery of admissible evidence in the pending action, in violation of Rule 26(b) of the Federal

3  Rules of Civil Procedure. As defined, the term "Foreign Counterpart" includes in its scope any

4  patent or patent applications by QUALCOMM in which QUALCOMM "claims, mentions, or

5  discusses, in whole or in part, the subject matter of any of the claims of the Patents-in-Suit." This

6  could include effectively any of QUALCOMM's broad patent portfolio dealing with wireless

7  telephony, and as such is excessively broad and unduly burdensome.

8     7.   QUALCOMM objects to the term "Maxim Accused Product or Method," as that term

9  is defined in Paragraph (K) of Maxim's definitions, and used in Interrogatory Nos. 1 and 2, on the

10  grounds that said definition is vague, ambiguous, uncertain, unduly burdensome, and may call for

11  information not reasonably calculated to lead to the discovery of admissible evidence in the pending

12  action, in violation of Rule 26(b) of the Federal Rules of Civil Procedure. Absent some initial

13  discovery from Maxim sufficient to enable the identification of which of Maxim's specific products

14  or methods infringe the Patents-In-Suit, QUALCOMM is not well positioned to respond to those

15  interrogatories that use this term.

16     8.   QUALCOMM objects to the term "QUALCOMM Device," as that term is defined in

17  Paragraph (O) of Maxim's definitions, on the grounds that said definition is vague, ambiguous,

18  uncertain, unduly burdensome, and may call for information not reasonably calculated to lead to the

19  discovery of admissible evidence in the pending action, in violation of Rule 26(b) of the Federal

20  Rules of Civil Procedure. As defined by Maxim, the term "QUALCOMM Device" could include all

21  phones, integrated circuits, and individual components made, manufactured, or sold by

22  QUALCOMM at any time, far exceeding the narrow range of products relevant to the pending

23  litigation.

24     9.   QUALCOMM objects to this set of interrogatories to the extent that purportedly

25  individual interrogatories contain numerous subparts in violation of the parties' Discovery Plan,

26  submitted on July 14, 2003. To the extent that the interrogatories contain such subparts, each

27  subpart should be counted as a separate interrogatory for purposes of the numerical limit of 50

28  interrogatories agreed upon by the parties in said Discovery Plan.

10.    QUALCOMM objects to this set of interrogatories to the extent that the information requested through these interrogatories will be disclosed at a later date, pursuant to the Pre-Trial Schedule to be issued by the Court.

11.    QUALCOMM objects to this set of interrogatories to the extent that they constitute contention interrogatories that are inappropriate at this early stage of discovery.

III.    SPECIFIC OBJECTIONS AND RESPONSES TO MAXIM'S INTERROGATORIES NOS. 1-3

Without waiving or limiting in any manner any of the foregoing General Objections, but rather incorporating them into the following responses to the extent applicable, QUALCOMM responds to Maxim's Interrogatories Nos. 1-3 as follows:

**INTERROGATORY NO. 1:**

Identify each "Maxim Accused Product or Method" and identify the claims of the Patents-In-Suit allegedly infringed for each identified product and/or method listing which claims of the Patents-In-Suit are allegedly infringed by which identified products and/or methods.

**RESPONSE TO INTERROGATORY NO. 1:**

QUALCOMM objects to this interrogatory on the ground that it is unduly burdensome.  In the interest of efficiency, QUALCOMM believes that it should be required to provide the information requested in this interrogatory only once, with the assistance of expert witnesses, at a later point in time after it has had the opportunity to obtain discovery from Maxim sufficient to enable it to comprehensively identify the specific Maxim products and/or methods that infringe the Patents-In-Suit, identify each infringing element of each such product or method, and identify the specific claims of the Patents-In-Suit that are infringed.

QUALCOMM further objects to this interrogatory to the extent that it seeks information protected by the attorney-client privilege or the work product doctrine.

QUALCOMM further objects to this interrogatory to the extent that the information it seeks will be disclosed at a later date, pursuant to the Pre-Trial Schedule to be issued by the Court.

Subject to and without waiving the general and specific objections set forth herein, QUALCOMM further responds to Interrogatory No. 1 as follows:

Based on the limited information currently available to it, and without the benefit of any

1 | initial discovery from Maxim or any third parties, QUALCOMM believes that at least the following

2 | Maxim products infringe the following claims of the Patents-In-Suit:

3 | Maxim's MAX2338 product infringes at least claims 4 and 5 of the '063 Patent.

4 | Maxim's MAX2338 product infringes at least claims 1, 3, 6-8, 14, and 17-19 of the '341

5 | Patent.

6 | Maxim's MAX2361 product infringes at least claims 1, 3, and 4 of the '473 Patent.

7 | Maxim's MAX2361 product infringes at least claims 1, 5, and 6 of the '408 Patent.

8 | Maxim's MAX2361 product infringes at least claims 1 and 2 of the '220 Patent.

9 | **INTERROGATORY NO. 2:**

10 | With specific reference to actual documents, drawings, photographs, and/or sketches of the

11 | Maxim Accused Products or Method, using reference numerals directed to portions of actual

12 | documents, drawings, photographs, and/or sketches, describe in detail how each and every claim of

13 | the Patents-In-Suit for which infringement is alleged is infringed, and also describe how each claim

14 | is infringed (e.g. directly, contributorily, by inducement; and literally, or under the doctrine of

15 | equivalents).

16 | **RESPONSE TO INTERROGATORY NO. 2:**

17 | QUALCOMM objects to this interrogatory on the ground that it is unduly burdensome. In

18 | the interest of efficiency, QUALCOMM believes that it should be required to provide the

19 | information requested in this interrogatory only once, with the assistance of expert witnesses, at a

20 | later point in time after it has had the opportunity to obtain discovery from Maxim sufficient to

21 | enable it to comprehensively identify the specific Maxim products and/or methods that infringe the

22 | Patents-In-Suit, identify each infringing element of each such product or method, and identify the

23 | specific claims of the Patents-In-Suit that are infringed.

24 | QUALCOMM further objects to this interrogatory to the extent that it seeks information

25 | protected by the attorney-client privilege or the work product doctrine.

26 | QUALCOMM further objects to this interrogatory to the extent it seeks to impose obligations

27 | on QUALCOMM beyond those imposed by the Federal Rules of Civil Procedure and the Local

28 | Rules of the Southern District of California.

1     QUALCOMM further objects to this interrogatory to the extent that the information it seeks

2 will be disclosed at a later date, pursuant to the Pre-Trial Schedule to be issued by the Court.

3     Subject to and without waiving the general and specific objections set forth herein,

4 QUALCOMM notes that the information disclosed in response to Interrogatory No. 1 also is

5 responsive to this interrogatory.  QUALCOMM intends to provide additional information responsive

6 to this interrogatory at the appropriate time.

7 **INTERROGATORY NO. 3:**

8     For each claim of the Patents-In-Suit that QUALCOMM contends is infringed by Maxim,

9 explain QUALCOMM's proposed construction of the claim, claim limitation by claim limitation,

10 and include in the explanation identification of any special or uncommon meanings of words or

11 phrases in the claim, all references from the specification that support, describe or explain each

12 element of the claim; all material in the prosecution history that describes or explains each element

13 of the claim; and any extrinsic evidence that supports the proposed construction of the claim,

14 including but not limited to, expert testimony, inventor testimony, dictionary definitions and

15 citations to learned treatises, as permitted by law.

16 **RESPONSE TO INTERROGATORY NO. 3:**

17     QUALCOMM objects to this interrogatory on the ground that the request to identify "any

18 special or uncommon meanings of words or phrases" present in the infringed claims is vague,

19 ambiguous, overly broad, unduly burdensome, and encompasses material that is neither relevant to

20 the subject matter of this litigation, nor reasonably calculated to lead to the discovery of admissible

21 evidence.

22     QUALCOMM further objects to this interrogatory to the extent that it seeks information

23 protected by the attorney-client privilege or the work product doctrine.

24     QUALCOMM further objects to this interrogatory on the ground that it is unduly

25 burdensome.  In the interest of efficiency, QUALCOMM believes that it should be required to

26 provide the information requested in this interrogatory only once, with the assistance of expert

27 witnesses.  To the extent that this interrogatory seeks construction and interpretation of the disputed

28 claims of the Patents-In-Suit and the appropriate documentation supporting QUALCOMM's claim

2903_7

1   construction of those claims, QUALCOMM will set forth its construction of the claims and identify

2   the appropriate supporting documentation during the *Markman* process and according to the timing

3   established by the Court.

4

5   Dated: September 16, 2003                    DAY CASEBEER

6                                               MADRID & BATCHELDER LLP

7

8   By: _____

9                                               James R. Batchelder

10                                              Attorneys for Plaintiff and Counterdefendant
                                                QUALCOMM INCORPORATED

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2903_7

QUALCOMM'S RESPONSE TO MAXIM'S INTERROGATORIES
NOS. 1-3                                    7                    CASE NO. 02 CV 2429 B (JFS)

**Ex. C-8**

## PROOF OF SERVICE

I am a citizen of the United States and resident of the State of California. I am employed in Santa Clara County, State of California, in the office of a member of the bar of this Court, at whose direction the service was made. I am over the age of eighteen years, and not a party to the within action. My business address is 20300 Stevens Creek Boulevard, Suite 400, Cupertino, California 95014.

On September 16, 2003, I served the following documents in the manner described below:

- **PLAINTIFF QUALCOMM INCORPORATED'S RESPONSE TO DEFENDANT MAXIM INTEGRATED PRODUCTS, INC.'S INTERROGATORIES NOS. 1-3**

[X]  (BY U.S. MAIL) I am personally and readily familiar with the business practice of Day Casebeer Madrid & Batchelder LLP for collection and processing of correspondence for mailing with the United States Parcel Service, and I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States Postal Service at Cupertino, California.

[X]  (BY FACSIMILE) I am personally and readily familiar with the business practice of Day Casebeer Madrid & Batchelder LLP for collection and processing of document(s) to be transmitted by facsimile and I caused such document(s) on this date to be transmitted by facsimile to the offices of addressee(s) at the numbers listed below.

[ ]  (BY OVERNIGHT MAIL) I am personally and readily familiar with the business practice of Day Casebeer Madrid & Batchelder LLP for collection and processing of correspondence for overnight delivery, and I caused such document(s) described herein to be deposited for delivery to a facility regularly maintained by Federal Express for overnight delivery.

On the following part(ies) in this action:

Chad S. Campbell
Brown & Bain, P.A.
2901 North Central Avenue, Ste 2000
Phoenix, AZ 85012
Telephone: (602) 351-8393
Facsimile: (602) 648-7193

Mark C. Mazzarella
Mazzarella, Dunwoody & Caldarelli LLP
550 West "C" Street, Suite 700
San Diego, CA 92101-8575
Telephone: (619) 238-4900
Facsimile: (619) 238-4959

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on September 16, 2003, at Cupertino, California.

_____
Janyce LeBaron

BROWN & BAIN, P.A.

Attorneys at Law

CHAD S. CAMPBELL
T(602) 351-8393
F(602) 648-7193
campbell@brownbain.com

September 12, 2003

<u>Maxim Integrated Products, Inc. adv. Qualcomm Incorporated</u>

Dear Jim:

This letter follows up on our telephone conference yesterday afternoon about pending discovery.

As discussed, Maxim has agreed to Qualcomm's request for an additional 30 days to respond to Maxim Interrogatories Nos. 4 and 5.

You also asked for an indication of discovery propounded by Qualcomm that in Maxim's view comes too early in the case. Although this letter is not meant to be a substitute for the formal responses, which will present Maxim's position in full, there are two general areas of concern that may be productive to raise in advance of our continued discussions. The first is the detailed financial data that the parties have requested from each other. The second is the general category of non-public, proprietary design documentation.

Regarding detailed financial data, Maxim would propose that the parties wait to exchange such information until later in the case. Ideally, Maxim believes the exchange should take place after the parties' respective infringement/noninfringement and validity/invalidity contentions have been disclosed in some detail and a month or two ahead of the time that such information is likely to become the subject of expert reports.

With respect to non-public, proprietary design documentation, Maxim would like to have an additional layer of protection. Specifically, for engineering design documents, schematics, layout diagrams and the like, Maxim seeks to restrict access to those outside litigation counsel who have no responsibility for the prosecution of Qualcomm patents or the development of other Qualcomm IP. Toward that end, we would propose that the following bolded language be added to existing Paragraph 5b in the stipulated protective order:

> b.    Only the following in-house litigation attorneys, and any paralegal assistants, technical, stenographic and clerical employees working under the direct supervision of such counsel: for Maxim Integrated Products, Inc., in-house litigation attorneys Charles Rigg and Edward Medlin, and for QUALCOMM Incorporated ("QUALCOMM"), in-house litigation attorneys Louis Lupin, Alexander Rogers, and Roger Martin; **provided, however, that engineering design documents, schematics, layout designs and**

**Ex. D-1**

MAILING ADDRESS
P.O. BOX 400
PHOENIX, ARIZONA 85001-0400

STREET ADDRESS
2901 NORTH CENTRAL AVENUE
PHOENIX, ARIZONA 85012-2788

T(602) 351-8000
F(602) 648-7000
www.brownbain.com

James R. Batchelder, Esq.                 -2-                 September 12, 2003

similar technical documentation that is designated "Attorney Eyes Only Information" by the producing party shall not be disclosed to any in-house attorney, paralegal assistant, technical, stenographic or clerical employee of the receiving party, or to outside counsel who have responsibility for drafting or prosecuting patent applications for the receiving party. The producing party shall mark each such document "Outside Litigation Counsel Only" in addition to the "Attorneys Eyes Only" designation.

We also talked about Qualcomm's objections to Maxim Interrogatories Nos. 1-3. Let me begin with Interrogatory No. 3, which addresses claim construction positions. You indicated Qualcomm's preference to push back a response to a period before the *Markman* briefing commences. As I indicated yesterday, we would like to know Qualcomm's claim construction contentions in detail substantially before the service of the opening briefs. As a means of achieving both parties' objectives, we would propose that the parties participate in the creation of a joint claims construction statement to be concluded at least 45 days before the first *Markman* brief is due.

Turning next to Interrogatories Nos. 1 and 2, I understood your explanation of Qualcomm's proposal to be that the response to No. 1 be limited for now to the identification of one infringing product and one claim per patent, and the response to No. 2 be delayed until an initial round of document and deposition discovery from Maxim is concluded.

As I indicated during our phone call, Maxim is not seeking a definitive and final recitation of Qualcomm's ultimate infringement case, but a basic understanding of why Qualcomm now believes that its patents are infringed by Maxim's products or actions. Although that would be a proper inquiry at a similar point in any patent case, it is particularly important here given the nature of the claims at issue and Maxim's parts. Thus, we propose that Qualcomm answer Interrogatories Nos. 1 and 2 now somewhat more completely than the scope of response you outlined yesterday. For Interrogatory No. 1, we propose that Qualcomm answer now with respect to the products it believes constitute infringement of the independent claims of the patent only. For Interrogatory No. 2, we invite Qualcomm to consider whether it would be willing to respond with respect to the independent claims identified in response to No. 1 by stating: (i) Qualcomm's present contentions as to which products whose manufacture, use or sale constitute a direct infringement and why; (ii) Qualcomm's present contentions regarding which products whose manufacture, use or sale constitute contributory infringement and why; and (iii) with respect to infringement by inducement, Qualcomm's present contentions regarding which elements of the asserted independent claims the accused Maxim products allegedly meet, which elements Qualcomm's baseband products or other aspects of purportedly infringing handsets allegedly meet, and the conduct by Maxim that is alleged to actively induce the infringement.

**Ex. D-2**

James R. Batchelder, Esq.                    -3-                    September 12, 2003

      We look forward to discussing the above on Monday.  If, in view of the above and your other commitments, the 9:00 a.m. time we scheduled presents a problem, we are happy to move the time earlier or later, as you prefer.

                            Sincerely,

                            Chad S. Campbell

James R. Batchelder, Esq.
  Day Casebeer Madrid & Batchelder LLP
    20300 Stevens Creek Blvd., Suite 400
    Cupertino, California  95014

CAM/mw

FACSIMILE AND MAIL

242295_1

**Ex. D-3**

# BROWN & BAIN, P.A.

Attorneys at Law

CHAD S. CAMPBELL
T(602) 351-8393
F(602) 648-7193
campbell@brownbain.com

September 22, 2003

### Maxim Integrated Products, Inc. adv. Qualcomm Incorporated
### United States District Court, Southern District of California Case No. 02 CV 2429 B(JFS)

Dear Jim:

This letter addresses Qualcomm's responses to Maxim's Interrogatories Nos. 1, 2, and 3 in light of the telephone conference with Judge Stiven on September 16, 2003 and the Case Management Conference Order that issued on September 18, 2003 ("Order").

**Maxim Interrogatory No. 3:**

Given the schedule for disclosing claim construction positions in the Order, Maxim withdraws Interrogatory No. 3.

**Maxim Interrogatory No. 1:**

Maxim requests both clarification and supplementation of Qualcomm's response to Maxim Interrogatory No. 1. Let me address the request for clarification first. Qualcomm's response recites the contentions that the MAX2338 infringes certain specified claims of the '063 and the '341 patents and the MAX2361 infringes certain specified claims of the '473, '408 and '220 patents. What is unclear to us is whether the listed claims for each product are the only asserted claims for that product. Stated differently, does the response identify all of the Patents-in-Suit and claims that Qualcomm believes are infringed by the MAX2338? Same question for the MAX2361?

Maxim also requests that Qualcomm supplement the response to Interrogatory No. 1 to identify all Maxim products or methods that Qualcomm believes infringe any of the Patents-in-Suit and to identify (as to each such product or method) the particular claims that Qualcomm contends are infringed. Please state whether Qualcomm is willing to so supplement its response.

**Maxim Interrogatory No. 2:**

Qualcomm's response to Interrogatory No. 2 provides objections but no substantive information. By letter dated September 12, 2003, Maxim proposed to narrow the required response at this stage of the case, a proposal that Qualcomm declined by letter dated September 15. As I mentioned to you on the telephone this morning, if Qualcomm's position has changed, please explain what the change entails.

**Ex. E-1**

MAILING ADDRESS
P.O. BOX 400
PHOENIX, ARIZONA 85001-0400

STREET ADDRESS
2901 NORTH CENTRAL AVENUE
PHOENIX, ARIZONA 85012-2788

T(602) 351-8000
F(602) 648-7000
www.brownbain.com

James R. Batchelder, Esq.                    -2-                    September 22, 2003


    We look forward to hearing from you regarding the above within the next day or two.  If we cannot reach agreement, Maxim expects to seek the Court's assistance.

Sincerely,

*Chad S. Campbell*

Chad S. Campbell

James R. Batchelder, Esq.
  Day Casebeer Madrid & Batchelder LLP
    20300 Stevens Creek Blvd., Suite 400
      Cupertino, California  95014

CAM/mw

FACSIMILE

Ex. E-2

1    Gerald L. McMahon (36050)
     David J. Zubkoff (149488)
2    SELTZER CAPLAN McMAHON VITEK
     2100 Symphony Towers
3    750 B Street
     San Diego, CA  92101
4    (619) 685-3003

5    Lloyd R. Day (90875)
     James R. Batchelder (136347)
6    DAY CASEBEER MADRID & BATCHELDER LLP
     20300 Stevens Creek Blvd., Suite 400
7    Cupertino, CA 95014
     (408) 873-0110

8
     Louis M. Lupin (120846)
9    Alexander H. Rogers (131879)
     Roger Martin (195003)
10   QUALCOMM INCORPORATED
     5775 Morehouse Drive
11   San Diego, CA  92121
     (858) 658-1121

12
     Attorneys for Plaintiff and Counterdefendant
13   QUALCOMM INCORPORATED

14                    UNITED STATES DISTRICT COURT

15                  SOUTHERN DISTRICT OF CALIFORNIA

16   QUALCOMM INCORPORATED,                  02 CV 2429 BTM (JFS)

17            Plaintiff,
                                             **QUALCOMM INCORPORATED'S FIRST
18                                           SET OF INTERROGATORIES TO MAXIM
         v.                                  INTEGRATED PRODUCTS, INC.**
19
     MAXIM INTEGRATED PRODUCTS, INC.
20   a Delaware Corporation,

21            Defendant.

22
     MAXIM INTEGRATED PRODUCTS, INC.
23   a Delaware Corporation,

24            Counterclaimant,

25       v.

26   QUALCOMM INCORPORATED,

27            Counterdefendant.

28

13445_4

QUALCOMM'S FIRST SET OF                                  No. 02CV2429 BTM (JFS)
INTERROGATORIES TO MAXIM              Ex. F-1

1    Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff and

2    Counterclaim Defendant QUALCOMM Incorporated requests that Defendant and Counterclaimant

3    Maxim Integrated Products, Inc. answer the following interrogatories, in writing and under oath,

4    within thirty (30) days of service hereof.

5    **I.     DEFINITIONS**

6        **1.**    As used herein, "all" means "any and all"; "any" means "any and all."

7        **2.**    As used herein, "and" and "or" encompass both "and" and "or," and references shall

8    be construed either as singular or plural, as necessary to bring within the scope of these requests

9    any information or DOCUMENTS and things that might otherwise be construed to be outside their

10   scope.

11       **3.**    As used herein, "'063 PATENT" means U.S. Patent No. 5,722,063.

12       **4.**    As used herein, "'220 PATENT" means U.S. Patent No. 5,655,220.

13       **5.**    As used herein, "'341 PATENT" means U.S. Patent No. 5,732,341.

14       **6.**    As used herein, "'408 PATENT" means U.S. Patent No. 5,590,408.

15       **7.**    As used herein, "'473 PATENT" means U.S. Patent No. 5,452,473.

16       **8.**    As used herein, "CDMA CELLULAR PHONE" means a cellular phone capable of

17   processing, transmitting, and receiving CDMA (code division multiple access) communication

18   signals.

19       **9.**    As used herein, "COMMUNICATION" means any transmission of information from

20   one PERSON to another, INCLUDING by personal meeting, memorandum, telephone, facsimile,

21   electronic mail, instant message, internet relay chat, news group, and teleconference.

22       **10.**   As used herein, "COMPATIBLE" means having the capability of INTERFACING,

23   replacing, communicating, coupling, working with, being used in combination with, or

24   interoperating.

25       **11.**   As used herein, "COMPATIBILITY" means the capability of INTERFACING,

26   replacing, communicating, coupling, working with, or interoperating.

27       **12.**   As used herein, "CONCERNING" means analyzing, addressing, consisting of,

28   constituting, regarding, referring to, relating to, refuting, discussing, describing, evidencing,

13445_4   QUALCOMM'S FIRST SET OF          1          No. 02CV2429 BTM (JFS)
          INTERROGATORIES TO MAXIM
                                    **Ex. F-2**

1  memorializing, reflecting, commenting on, or otherwise having any logical or factual connection

2  to the subject matter of the request.

3      **13.**  As used herein, "DOCUMENT(S)" means any written, printed, typed, recorded,

4  magnetic, punched, copied, graphic or other tangible thing in, through, or from which information

5  may be embodied, translated, conveyed, or stored (INCLUDING correspondence, memoranda,

6  notes, records, books, papers, telegrams, telexes, electronic mail, group or collaboration servers

7  (INCLUDING SharePoint servers), electronic bulletin boards, electronic discussion boards,

8  dictation tapes, video recordings, audio recordings, digital recordings, computer tapes

9  (INCLUDING back-up tapes), computer disks (INCLUDING back-up disks), computer printouts,

10  microfilm, microfiche, worksheets, diaries, calendars, photographs, charts, drawings, sketches and

11  all other writings or drafts thereof).

12      **14.**  As used herein, "EMPLOYEE(S)" means any director, trustee, officer, employee,

13  partner, corporate parent, subsidiary, affiliate or servant of the designated entity, whether active or

14  retired, full-time or part-time, current or former, and compensated or not.

15      **15.**  As used herein, "INCLUDE" means "include without limitation".

16      **16.**  As used herein, "INCLUDING" means "including but not limited to".

17      **17.**  As used herein, the terms "IDENTIFY" and "IDENTIFICATION" when used in

18  reference to a COMMUNICATION mean to state the date of the COMMUNICATION, the

19  method of transmission (*i.e.*, personal meeting, telephone call, electronic mail, etc.), and the names

20  of all of the individuals involved in the COMMUNICATION.

21      **18.**  As used herein, the terms "IDENTIFY" and "IDENTIFICATION" when used in

22  reference to a DOCUMENT or PUBLICATION means to state the date, author(s), format (*i.e.*,

23  memorandum, book, photograph, etc.), and title or subject matter of the DOCUMENT or

24  PUBLICATION.

25      **19.**  As used herein, the terms "IDENTIFY" and "IDENTIFICATION" when used in

26  reference to a PERSON mean to state the name of the PERSON, its present business address, its

27  present telephone number, and the name, title, business address, and business telephone number of

28  the EMPLOYEE of that PERSON who is most likely to have knowledge of the facts and

QUALCOMM'S FIRST SET OF          2          No. 02CV2429 BTM (JFS)
INTERROGATORIES TO MAXIM

1    circumstances surrounding or constituting the acts or conduct for which QUALCOMM has asked

2    MAXIM to IDENTIFY the PERSON.

3        **20.**    As used herein, the terms "IDENTIFY" and "IDENTIFICATION" when used in

4    reference to a PRODUCT means to state its brand name, model number, and first and last dates of

5    manufacture.

6        **21.**    As used herein, the terms "IDENTIFY" and "IDENTIFICATION" when used in

7    reference to an INDIVIDUAL means to state his full name, residence and business telephone

8    numbers, present residence and business addresses if known, and his present or last known title,

9    position and business affiliation.

10       **22.**    As used herein, "INDIVIDUAL(S)" means any natural person.

11       **23.**    As used herein, "INTERFACE" means any set of logical, physical, or electrical

12   parameters that describe a connection, coupling, or interaction between electronic devices.

13       **24.**    As used herein, "INTERFACING" means operating, connecting, coupling, or

14   interacting in accordance with an INTERFACE.

15       **25.**    As used herein, "MAXIM" means defendant Maxim Integrated Products,

16   Incorporated, its officers, directors, EMPLOYEES, divisions, subsidiaries, predecessors-in-

17   interest, successors-in-interest, any joint venture to which it may be a party, consultants, agents

18   and accountants, INCLUDING any PERSON who served in any such capacity at any time.

19       **26.**    As used herein, "MAXIM CHIP" means any MAXIM RECEIVER, MAXIM

20   TRANSMITTER, or MAXIM POWER AMP.

21       **27.**    As used herein, "MAXIM RECEIVER" means any MAXIM integrated circuit,

22   related technology, or PRODUCT containing wireless receiver or transceiver circuitry and capable

23   of use in a CDMA CELLULAR PHONE to receive signals, INCLUDING MAXIM's MAX230x

24   series, MAX231x series, MAX232x series (INCLUDING the MAX2320 and MAX2324), MAX

25   2328, MAX2328 "Qualcomm Special", MAX2338, MAX2338 "Qualcomm Special", MAX2538,

26   and ZERO IF receive chip products and predecessors, prototypes, and successors of such products.

27       **28.**    As used herein, "MAXIM POWER AMP" means any MAXIM PRODUCT or device

28   containing power amplifier circuitry and capable of use in a CDMA CELLULAR PHONE,

1   INCLUDING MAXIM's MAX226x series and MAX228x series products, and predecessors,

2   prototypes, and successors of such products.

3        29.   As used herein, "MAXIM TRANSMITTER" means any MAXIM integrated circuit,

4   related technology, or PRODUCT containing wireless transmitter or transceiver circuitry and

5   capable of use in a CDMA CELLULAR PHONE to transmit signals, INCLUDING MAXIM's

6   MAX236x series and ZERO IF transmit chip products, and predecessors, prototypes, and

7   successors of such products.

8        30.   As used herein, "MSM" means any QUALCOMM or QUALCOMM licensed Mobile

9   Station Modem chipset, INCLUDING Mobile Station Modem chipsets in QUALCOMM's

10  MSM6xxx, MSM5xxx, MSM4xxx, MSM3xxx, and MSM2xxx product lines and predecessors,

11  prototypes, and successors of such products lines.

12       31.   As used herein, "MSM ARCHITECTURE" means any configuration of electronic

13  components or circuitry that comprises, includes, connects to, or couples with, an MSM.

14       32.   As used herein, "PATENT APPLICATION" means any original, reissue, divisional,

15  continuation, or continuation-in-part application for patent, domestic and foreign, as well as any

16  abandoned or suspended application.

17       33.   As used herein, "PERSON(S)" means any INDIVIDUAL and any other cognizable

18  entity, INCLUDING corporations, proprietorships, partnerships, joint ventures, businesses,

19  consortiums, clubs, associations, foundations, governmental agencies or instrumentalities,

20  societies, and orders.

21       34.   As used herein, the term "PRODUCT" means any component or device, whether or

22  not commercially sold, INCLUDING any integrated circuit or related technology.

23       35.   As used herein, the term "PUBLICATION" means any printed or recorded

24  DOCUMENT distributed or made available for view without confidentiality restrictions,

25  INCLUDING any magazine, newspaper, trade journal, article, dissertation, presentation, lecture,

26  patent, abandoned PATENT APPLICATION referred to in any issued patent, standard, report,

27  white paper, presentation handout, slide, drawing, graphical representation, SPECIFICATIONS,

28  book, web page, abstract, catalogue, advertisement, newsletter, electronic bulletin board, and

1    electronic newsgroup.

2         **36.**   As used herein, "QUALCOMM" means plaintiff QUALCOMM Incorporated, its

3    officers, directors, EMPLOYEES, divisions, subsidiaries, INCLUDING Qualcomm Consumer

4    Products Incorporated, predecessors or successors-in-interest, any joint venture to which it may be

5    a party, consultants, agents and accountants, INCLUDING any PERSON who served in any such

6    capacity at any time.

7         **37.**   As used herein, "QUALCOMM CHIP" means any QUALCOMM RECEIVER,

8    QUALCOMM TRANSMITTER, or QUALCOMM POWER AMP.

9         **38.**   As used herein, "QUALCOMM'S LAWSUIT" means the civil suit filed by

10   QUALCOMM against MAXIM in the District Court for the Southern District of California, Civil

11   Action No. 02 CV 2429 BTM (JFS), INCLUDING the claims enumerated in QUALCOMM's

12   Second Amended Complaint filed on July 29, 2003.

13        **39.**   As used herein, "QUALCOMM PATENTS" means the QUALCOMM patents

14   asserted against MAXIM in QUALCOMM's LAWSUIT, INCLUDING the '063 PATENT, the

15   '220 PATENT, the '341 PATENT, the '408 PATENT, and the '473 PATENT.

16        **40.**   As used herein, "QUALCOMM PRODUCT" means any PRODUCT, device, or

17   technology designed, manufactured, sold, or licensed by QUALCOMM, INCLUDING any

18   QUALCOMM CHIP, MSM, MSM ARCHITECTURE, or QUALCOMM CDMA CELLULAR

19   PHONE.

20        **41.**   As used herein, "QUALCOMM RECEIVER" means any QUALCOMM receiver

21   device or PRODUCT, INCLUDING QUALCOMM's IFR3000, IFR3300, IFR3500, RFR3100,

22   RFR3300, RFR5200, RFR6000, RFR6200, ZERO IF receive chip, and predecessors, prototypes,

23   and successors of such products.

24        **42.**   As used herein, "QUALCOMM POWER AMP" means any QUALCOMM device or

25   PRODUCT, device designed or manufactured on behalf of QUALCOMM, device designed or

26   manufactured by or on behalf of any joint venture or joint development program between

27   QUALCOMM and a third party, or third-party device containing power amplifier circuitry,

28   INCLUDING QUALCOMM's PA 3300, and predecessors, prototypes, and successors of such

1    products.

2    **43.**    As used herein, "QUALCOMM TRANSMITTER" means any QUALCOMM

3    transmitter device or PRODUCT, INCLUDING QUALCOMM's IFT3000, RFT3100, RFT3500,

4    RFT5200, RFT 5600, RFT6100, RTR6200, RTR6300, ZERO IF transmit chip, and predecessors,

5    prototypes, and successors of such products.

6    **44.**    As used herein, "SPECIFICATION(S)" means any DOCUMENT, disclosure,

7    presentation, or list of features or parameters that lists, describes, or depicts any feature,

8    characteristic or parameter of a device or component thereof, INCLUDING all versions of

9    promotional or sales literature, technical literature, user documentation, operational characteristics,

10   performance specifications, design proposals, technical drawings, schematics, block diagrams,

11   timing diagrams, flow charts, state diagrams, truth tables, software computer code, firmware

12   computer code, simulation procedures, simulation results, test or verification procedures, test or

13   verification results, pin configurations, photographs, plots, and graphs.

14   **45.**    As used herein, "YOU" and "YOUR" mean MAXIM and all of its agents,

15   representatives, and attorneys.

16   **46.**    As used herein, "ZERO IF" and "ZERO INTERMEDIATE FREQUENCY" means

17   direct upconversion from a baseband frequency to a radio frequency or direct downconversion

18   from a radio frequency to a baseband frequency.

19   **II.    INSTRUCTIONS**

20   **1.**    In answering these interrogatories, MAXIM is required to furnish truthfully and in

21   good faith all information that is presently available to MAXIM, regardless of whether such

22   information was obtained directly by MAXIM.

23   **2.**    If any of the following interrogatories cannot be answered in full, please answer to

24   the extent possible, specifying the reasons for MAXIM's inability to answer the remainder of the

25   interrogatory and stating whatever information, knowledge or belief MAXIM does have

26   concerning the unanswered portion thereof.

27   **3.**    Each interrogatory shall be answered fully unless it is in good faith objected to, in

28   which event the reasons for MAXIM's objection shall be stated in detail. If an objection pertains

1  to only a portion of an interrogatory, or a word, phrase, or clause contained in it, MAXIM is

2  required to state MAXIM's objection to that portion only and to respond to the remainder of the

3  interrogatory, using MAXIM's best efforts to do so.  MAXIM's answers hereto are to be signed

4  and verified by the persons making them, and the objections signed by the attorney making them.

5       **4.**    If an interrogatory is silent as to the time period for which a response is sought,

6  please respond with respect to the time period commencing December 12, 1996 through the date of

7  MAXIM's response.

8       **5.**    If MAXIM or MAXIM's counsel asserts that any information or response requested

9  herein is privileged or otherwise protected from discovery, please set forth in MAXIM's written

10  response hereto with respect to each DOCUMENT, COMMUNICATION or thing for which a

11  claim of privilege is made:

12            a)    The place, approximate date, and manner of recording, creating or otherwise

13  preparing the DOCUMENT, COMMUNICATION or thing;

14            b)    The name and organizational position, if any, of each sender of the

15  DOCUMENT, COMMUNICATION or thing;

16            c)    The name and organizational position, if any, of each recipient and/or

17  custodian of the DOCUMENT, COMMUNICATION or thing;

18            d)    A statement of the basis on which privilege is claimed with respect to each

19  DOCUMENT, COMMUNICATION or thing and whether or not its contents are limited solely to

20  legal advice or information provided for the purpose of securing legal advice; and

21            e)    The number of the interrogatory to which the DOCUMENT,

22  COMMUNICATION or thing is responsive.

23       **6.**    MAXIM is required to supplement each response hereto to the full extent provided

24  for in Federal Rule of Civil Procedure 26(e) and the local rules.

25  **III.    INTERROGATORIES**

26  **INTERROGATORY NO. 1:**

27       Please IDENTIFY and describe in as much detail as possible each MAXIM CHIP ever

28  manufactured, sold, licensed, offered for sale or license, or currently in development by MAXIM,

1   INCLUDING any such chip incorporating ZERO IF technology.

2   **INTERROGATORY NO. 2:**

3       Separately for each MAXIM CHIP, please IDENTIFY the PERSONS most knowledgeable

4   about that chip, INCLUDING an IDENTIFICATION of the five INDIVIDUALS most responsible

5   for the design, development, and testing of that chip (listed in order from most responsible to least

6   responsible), an IDENTIFICATION of the five INDIVIDUALS most responsible for the

7   manufacturing, assembly, and production of that chip (listed in order from most responsible to

8   least responsible), an IDENTIFICATION of the five INDIVIDUALS most responsible for the

9   marketing, licensing, and sale of that chip (listed in order from most responsible to least

10  responsible), and an IDENTIFICATION of the five INDIVIDUALS most responsible for

11  preparing any plans, strategies, or competitive analyses for that chip (listed in order from most

12  responsible to least responsible).

13  **INTERROGATORY NO. 3:**

14      Please IDENTIFY and describe in as much detail as possible each past or present use that

15  is known to MAXIM of a MAXIM CHIP with an MSM or MSM ARCHITECTURE.  Separately

16  for each such use by any PERSON, MAXIM's answer should INCLUDE an IDENTIFICATION

17  of the MAXIM CHIP(s) used, an IDENTIFICATION of the MSM or MSM ARCHITECTURE

18  used, an IDENTIFICATION of the circuit architecture for such use (INCLUDING any schematics,

19  drawings, or SPECIFICATIONS), an IDENTIFICATION of the three INDIVIDUALS most

20  knowledgeable regarding such use (listed from most knowledgeable to least knowledgeable), and

21  an IDENTIFICATION of the time period of that use.

22  **INTERROGATORY NO. 4:**

23      Separately for each MAXIM CHIP, please IDENTIFY and describe in as much detail as

24  possible each CDMA CELLULAR PHONE into which that chip has been incorporated.

25  Separately for each such phone, MAXIM's answer should INCLUDE an IDENTIFICATION of

26  the MAXIM CHIP(s) incorporated in that phone, an IDENTIFICATION of the MSM or MSM

27  ARCHITECTURE incorporated in that phone, an IDENTIFICATION of the circuit architecture in

28  that phone (INCLUDING any schematics, drawings, or SPECIFICATIONS), an

1  IDENTIFICATION of the date(s) of the above-referenced incorporations into that phone, an

2  IDENTIFICATION of the manufacturer of that phone, an IDENTIFICATION of the model

3  number of such phone, an IDENTIFICATION of the production date(s) of that phone, and an

4  IDENTIFICATION of the three INDIVIDUALS most knowledgeable regarding that incorporation

5  of that MAXIM CHIP (listed from most knowledgeable to least knowledgeable).

6  **INTERROGATORY NO. 5:**

7       Separately for each MAXIM CHIP, please describe on a country-by-country basis and in as

8  much detail as possible the facts and circumstances surrounding the first production, use, sale,

9  license, and offer for sale or license of that chip in that country.  Separately for each such event,

10  MAXIM's answer should INCLUDE an IDENTIFICATION of the date of such event, an

11  IDENTIFICATION of each PERSON other than MAXIM involved in that event, an

12  IDENTIFICATION of the three INDIVIDUALS (excluding attorneys) most knowledgeable

13  regarding the facts surrounding that event (listed in order from most knowledgeable to least

14  knowledgeable), and an IDENTIFICATION of all DOCUMENTS pertaining to such facts.

15  **INTERROGATORY NO. 6:**

16       Separately for each MAXIM CHIP, please describe in as much detail as possible each test

17  or analysis performed on that chip during its design and development and each test or analysis

18  performed on that chip in the course of its manufacture.  Separately for each such test or analysis,

19  MAXIM's answer should INCLUDE an IDENTIFICATION of each DOCUMENT generated in

20  connection with that test or analysis, an IDENTIFICATION of each device or chip (whether or not

21  made by MAXIM) used in connection with that test or analysis, and an IDENTIFICATION of the

22  three MAXIM EMPLOYEES most knowledgeable regarding the performance of that test or

23  analysis (listed in order from most knowledgeable to least knowledgeable).

24  **INTERROGATORY NO. 7:**

25       Separately for each MAXIM CHIP and separately for each design, development, testing,

26  production, manufacturing, assembly, marketing, licensing, and sale of that chip, please

27  IDENTIFY and describe in as much detail as possible the business unit(s) within MAXIM

28  responsible for that activity.  Separately for each such business unit, and separately for each year

1   from 1996 to the present, MAXIM's answer should INCLUDE an IDENTIFICATION of each

2   EMPLOYEE within that business unit at a management level or higher, and, separately for each

3   such EMPLOYEE, an IDENTIFICATION of each INDIVIDUAL to whom that EMPLOYEE

4   directly reports or reported and each INDIVIDUAL whom that EMPLOYEE directly supervises or

5   supervised.

6   **INTERROGATORY NO. 8:**

7       Separately for each MAXIM CHIP and separately for each MSM and MSM

8   ARCHITECTURE, please provide as much information as possible regarding the extent to which

9   that chip is COMPATIBLE with that MSM or MSM ARCHITECTURE.  Separately for each such

10  description, MAXIM's answer should INCLUDE an IDENTIFICATION of each DOCUMENT

11  CONCERNING the extent of such COMPATIBILITY and an IDENTIFICATION of the three

12  MAXIM EMPLOYEES most knowledgeable regarding the extent of such COMPATIBILITY

13  (listed in order from most knowledgeable to least knowledgeable).

14  **INTERROGATORY NO. 9:**

15      Separately for each MAXIM CHIP, please IDENTIFY and describe in as much detail as

16  possible each proposed, potential, or actual sale, offer to sell, license, and distribution of each such

17  chip.  Separately for each such chip, MAXIM's answer should INCLUDE an IDENTIFICATION

18  of each PERSON to which such chip was sold, an IDENTIFICATION of each PERSON to whom

19  such chip was offered for sale, an IDENTIFICATION of each PERSON to which such chip was

20  licensed, an IDENTIFICATION of each PERSON to which such chip was distributed, and the date

21  of each such event.

22  **INTERROGATORY NO. 10:**

23      Separately for each MAXIM CHIP, separately by month (or the most frequent period for

24  which such information is kept), separately by customer, and separately by country, please state

25  (using the greatest level of detail possible) the unit sales, unit licenses, licensing revenues, sales

26  revenues, costs, variances, and profits generated or incurred from MAXIM's sales, licensing, and

27  distribution of that chip.

28  ///

**INTERROGATORY NO. 11:**

Separately for each MAXIM CHIP, separately by month (or the most frequent period for which such information is kept), separately by customer, and separately by country, please state (using the greatest level of detail possible) MAXIM's proposed, potential, and actual pricing of that chip INCLUDING all discounts.

**INTERROGATORY NO. 12:**

Separately or each MAXIM CHIP, please IDENTIFY and describe in as much detail as possible each actual, proposed, or potential agreement (INCLUDING any term sheet, memorandum of understanding, non-disclosure agreement, confidentiality agreement, sales agreement, or licensing agreement) between QUALCOMM and MAXIM CONCERNING that chip. Separately for each such actual, proposed, or potential agreement, Maxim's answer should INCLUDE an IDENTIFICATION of all DOCUMENTS CONCERNING that agreement, an IDENTIFICATION of the three MAXIM EMPLOYEES most knowledgeable regarding that agreement (listed in the order of most knowledgeable to least knowledgeable), and an IDENTIFICATION of the three QUALCOMM EMPLOYEES with whom those MAXIM EMPLOYEES spent the most time negotiating or discussing that agreement.

**INTERROGATORY NO. 13:**

Separately for each of the QUALCOMM PATENTS, please separately IDENTIFY and describe each PUBLICATION known to MAXIM that describes all or part of the subject matter claimed in that patent that was published or disclosed before the priority date of that patent. Separately for each such PUBLICATION, MAXIM's answer should INCLUDE an IDENTIFICATION of the portion(s) of the subject matter claimed in any of the QUALCOMM PATENTS described in that PUBLICATION and an IDENTIFICATION of the date that PUBLICATION was first known to MAXIM.

**INTERROGATORY NO. 14:**

Separately for each of the QUALCOMM PATENTS, please IDENTIFY and describe each PRODUCT known to MAXIM that embodies all or part of the subject matter claimed in that patent that was used, made, offered for sale, or sold before the priority date of that patent.

1  Separately for each such PRODUCT, MAXIM's answer should INCLUDE an IDENTIFICATION

2  of the portion(s) of the subject matter claimed in any of the QUALCOMM PATENTS described in

3  that PRODUCT and an IDENTIFICATION of the date that that PRODUCT was first known to

4  MAXIM.

5  **INTERROGATORY NO. 15:**

6      Separately for each of the affirmative defenses asserted by MAXIM CONCERNING

7  QUALCOMM'S LAWSUIT, please IDENTIFY and describe all information known to MAXIM

8  that supports or detracts in any way from that affirmative defense.

9  **INTERROGATORY NO. 16:**

10      Separately for each of the QUALCOMM PATENTS, please describe in as much detail as

11  possible the facts and circumstances surrounding MAXIM's first knowledge of that patent and

12  MAXIM's reaction to that patent.  Such description should INCLUDE an IDENTIFICATION of

13  the date that MAXIM first learned of the existence of that patent and an IDENTIFICATION of the

14  date that MAXIM first came to anticipate that MAXIM and QUALCOMM may be involved in

15  litigation regarding that patent.  Separately for each of these events, MAXIM's answer also should

16  INCLUDE an IDENTIFICATION of the three MAXIM EMPLOYEES most knowledgeable

17  regarding the facts surrounding that event (listed in order from most knowledgeable to least

18  knowledgeable) and an IDENTIFICATION of all DOCUMENTS pertaining to such facts.

19  **INTERROGATORY NO. 17:**

20      Please state whether MAXIM has relied upon or is relying upon any written or oral opinion

21  of counsel regarding the validity, enforceability, or infringement by MAXIM of any of the

22  QUALCOMM PATENTS.  If MAXIM has relied upon or is relying upon any such opinion of

23  counsel, separately for each such opinion of counsel, please IDENTIFY each PERSON involved in

24  the drafting or formulation of that opinion, and IDENTIFY each DOCUMENT and

25  COMMUNICATION CONCERNING that opinion.

26  **INTERROGATORY NO. 18:**

27      Please IDENTIFY and describe each COMMUNICATION involving MAXIM

28  CONCERNING any of the QUALCOMM PATENTS or any part of QUALCOMM'S LAWSUIT.

1    Separately for each such COMMUNICATION, MAXIM's answer should INCLUDE an

2    IDENTIFICATION of each PERSON who participated in that COMMUNICATION, an

3    IDENTIFICATION of the date of that COMMUNICATION, and an IDENTIFICATION of each

4    DOCUMENT CONCERNING that COMMUNICATION.

5    Dated: August 20, 2003                         DAY CASEBEER
                                                     MADRID & BATCHELDER LLP
6

7

8    By: _____
                                  Lily Lim
9

10                                    Attorneys for Plaintiff
                                      QUALCOMM INCORPORATED
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PROOF OF SERVICE

I am a citizen of the United States and resident of the State of California. I am employed in Santa Clara County, State of California, in the office of a member of the bar of this Court, at whose direction the service was made. I am over the age of eighteen years, and not a party to the within action. My business address is 20300 Stevens Creek Boulevard, Suite 400, Cupertino, California 95014.

On August 20, 2003, I served the following documents in the manner described below:

- **QUALCOMM INCORPORATED'S FIRST SET OF INTERROGATORIES TO MAXIM INTEGRATED PRODUCTS, INC.**

[X] (BY U.S. MAIL) I am personally and readily familiar with the business practice of Day Casebeer Madrid & Batchelder LLP for collection and processing of correspondence for mailing with the United States Parcel Service, and I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States Postal Service at Cupertino, California.

[X] (BY FACSIMILE) I am personally and readily familiar with the business practice of Day Casebeer Madrid & Batchelder LLP for collection and processing of document(s) to be transmitted by facsimile and I caused such document(s) on this date to be transmitted by facsimile to the offices of addressee(s) at the numbers listed below.

[ ] (BY OVERNIGHT MAIL) I am personally and readily familiar with the business practice of Day Casebeer Madrid & Batchelder LLP for collection and processing of correspondence for overnight delivery, and I caused such document(s) described herein to be deposited for delivery to a facility regularly maintained by Federal Express for overnight delivery.

On the following part(ies) in this action:

Chad S. Campbell
Brown & Bain, P.A.
2901 North Central Avenue, Ste 2000
Phoenix, AZ 85012
(602) 351-8393

Mark C. Mazzarella
Mazzarella, Dunwoody & Caldarelli LLP
550 West "C" Street, Suite 700
San Diego, CA 92101-8575
(619) 238-4900

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on August 20, 2003, at Cupertino, California.

_Christina M. De Anda_
Christina M. De Anda

PROOF OF SERVICE                    i                    No. 02CV2429 BTM (JFS)

33194_1

**Ex. F-15**

# DAY CASEBEER
## MADRID & BATCHELDER LLP

20300 Stevens Creek Blvd., Suite 400
Cupertino, CA  95014
Telephone: (408) 873-0110
Facsimile:  (408) 873-0220

James R. Batchelder
(408) 342-4565
jbatchelder@daycasebeer.com

October 1, 2003

VIA FACSIMILE & U.S. MAIL

Chad S. Campbell
Brown & Bain
2901 North Central Avenue
Suite 2000
Phoenix, AZ 85012

Re:    *QUALCOMM Incorporated v. Maxim Integrated Products, Inc.*

Dear Chad:

I write regarding some initial concerns that we have regarding Maxim's Responses to
QUALCOMM Incorporated's First Set of Interrogatories (Nos. 1-18).  This is not intended to be a
comprehensive list of our concerns, and QUALCOMM reserves the right to address other issues
regarding Maxim's interrogatory responses at a later time.

## Global Issues

### Maxim's Objection to Producing "Highly Sensitive" Information

Maxim has stated in its General Objection E to QUALCOMM's Interrogatories Nos. 1-18 that it
objects to disclosing information relating to Maxim products currently in development, on the basis
that "[t]he prejudice to Maxim from the disclosure of such highly confidential, trade secret
information substantially outweighs whatever marginal relevance such information may have."
Maxim repeats this objection in its specific responses to Interrogatories Nos. 1, 2, 6, 7, and 8,
stating that information regarding Maxim products currently in development is "highly sensitive"
and not relevant.

We are unaware of any prejudice that Maxim would suffer by disclosing to QUALCOMM any of
its "highly confidential," "highly sensitive," or "trade secret" information, given the safeguards
currently provided by the protective order in the case.  Furthermore, information regarding Maxim
products currently in development is directly relevant to the case, as such products can still infringe
the patents-in-suit regardless of their stage of development.  Therefore, please either supplement
Maxim's interrogatory responses immediately to include information regarding Maxim products

37374_1

**Ex. G-1**

DAY CASEBEER
MADRID & BATCHELDER LLP

Chad S. Campbell
October 1, 2003
Page 2

currently in development, or confirm that Maxim is not withholding any information from its
responses based on its "highly sensitive information" objection.

### General Objections F, G, H, I

Maxim has stated in its General Objection F that it objects to QUALCOMM's definition of terms to
the extent they vary from the ordinary meanings of those words. We do not understand Maxim's
basis for this objection. QUALCOMM is entitled to define terms in its interrogatories in order to
specify and clarify the information it seeks from Maxim. Furthermore, QUALCOMM disagrees
with Maxim's claims in its General Objections G, H, and I that the terms identified in those
objections are vague, overly broad, unduly burdensome, or encompass material that is not relevant
to the subject matter of this litigation. Please confirm that Maxim is not withholding any
information from its responses to QUALCOMM's interrogatories on the basis of General
Objections F, G, H, and I.

### Designation of Documents under Rule 33(d)

As part of its response to Interrogatories Nos. 1, 3, 4, 5, 6, 8, 13, 14, and 18, rather than fully
disclosing the information requested in the interrogatory, Maxim has stated generally that it "will
produce" documents that it designates "pursuant to Federal Rule of Civil Procedure 33(d)."

Maxim's attempt to rely upon Rule 33(d) designations is faulty in several respects. First, Rule
33(d) states that the designation of documents must be "in sufficient detail to permit the
interrogating party to locate and to identify, as readily as can the party served, the records from
which the answer may be ascertained." Under this requirement, parties cannot simply refer
generically to past or future production of documents. *See Pulsecard, Inc. v. Discover Card Servs.,
Inc.*, 168 F.R.D. 295, 305 (D. Kan. 1996). Maxim has done exactly that by referencing unidentified
documents that it "will produce" at some unspecified point in the future.

Second, not only has Maxim failed to specifically identify the documents it wishes to designate, it
has also failed to timely *produce* those documents as well. Answers to interrogatories must be
served within 30 days after the interrogatories have been served. *See* Fed. R. Civ. P. 33(b). Maxim
cannot circumvent this deadline for responding by promising to produce responsive documents
under Rule 33(d) at some unspecified future date. Any documents Maxim wishes to designate
under Rule 33(d), if not already produced to QUALCOMM, should have been produced at the time
the interrogatory responses were due.

Third, in order to comply with Rule 33(d), Maxim must be able to represent that the information
that QUALCOMM seeks in its interrogatories can *in fact* be found in the records that Maxim
specifies. *See Sabel v. Mead Johnson & Co.*, 110 F.R.D. 553, 555 (D. Mass. 1986). Maxim does

37374_1

**Ex. G-2**

DAY CASEBEER
MADRID & BATCHELDER LLP

Chad S. Campbell
October 1, 2003
Page 3

not appear to have made any such representations in its responses. In fact, with respect to at least Interrogatories Nos. 3, 4, and 8, Maxim has hedged its designations by stating that it "will produce" documents "[t]o the extent there may be some in Maxim's possession" or "to the extent Maxim has such information." Maxim cannot invoke Rule 33(d) by representing that the information responsive to QUALCOMM's interrogatories *might* exist in some documents that *might* be produced at some later date.

Finally, for certain interrogatories, QUALCOMM believes that Maxim is not entitled to respond by providing Rule 33(d) designations in lieu of narrative responses. I will discuss these issues separately, in the context of the specific interrogatories, below.

In light of the deficiencies that I already have discussed regarding Maxim's Rule 33(d) designations, however, please confirm that:

- Maxim will immediately identify, by Bates number, the specific documents it wishes to designate for its response to Interrogatories Nos. 1, 3, 4, 5, 6, 8, 13, 14, and 18;

- Maxim will produce by the end of this week those specifically designated documents to QUALCOMM; and

- Maxim will represent that all of the information requested in Interrogatories Nos. 1, 3, 4, 5, 6, 8, 13, 14, and 18, and to which Maxim is responding with Rule 33(d) designations, is in fact available within the designated documents.

## Specific Interrogatory Responses

In addition to the general concerns we have regarding Maxim's responses discussed above, we also have the following concerns regarding specific responses provided by Maxim to QUALCOMM's interrogatories.

### Interrogatory No. 2

In its response to Interrogatory No. 2, Maxim has stated that it is not practicable to identify five individuals with "meaningful levels of knowledge in each of the listed categories" for each identified Maxim product. Please confirm that, where Maxim has listed less than five individuals for each category and product, Maxim is not aware of any other individuals who have "meaningful levels of knowledge" regarding that category and that product.

37374_1

Ex. G-3

DAY CASEBEER
MADRID & BATCHELDER LLP

Chad S. Campbell
October 1, 2003
Page 4

## Interrogatories Nos. 5 and 6

Maxim has failed to provide a substantive response to Interrogatories Nos. 5 and 6, relying instead upon its representation that it will produce and designate responsive documents under Rule 33(d).

In addition to the concerns I already have raised regarding Maxim's Rule 33(d) designations, we believe that Maxim must provide a narrative response to Interrogatories Nos. 5 and 6, rather than designating responsive documents. Rule 33(d) specifically states that document designations are appropriate only where "the burden of deriving or ascertaining the answer [to the interrogatory] is substantially the same for the party serving the interrogatory as for the party served."

With respect to Interrogatory 5, we fail to see how the burden to Maxim of identifying the first production, use, sale, license, and offer for sale or license of each Maxim chip in each country is substantially the same as for QUALCOMM. Similarly, with respect to Interrogatory 6, we fail to see how the burden to Maxim of identifying each test or analysis performed on each Maxim chip during its design, development, and manufacture is substantially the same as for QUALCOMM. For both of these interrogatories, we believe that Maxim is in a better position to glean this information from its documents than QUALCOMM. Please provide us immediately with a narrative response to these interrogatories.

## Interrogatory No. 7

We understand from Maxim's response to Interrogatory No. 7 that the Wireless Communications Business Unit ("WCBU") is responsible for the design, development, testing, production, manufacturing, assembly, marketing, licensing, and sale of the Maxim chips identified by Maxim in responses to Interrogatory No. 1. We further understand that the twelve employees identified by Maxim in response to Interrogatory No. 7 represent the current management staff of the WCBU. Please confirm that our understanding of Maxim's response to this interrogatory is correct.

If in fact our understanding is correct, we fail to see how it is unduly burdensome for Maxim to identify who among this limited number of individuals has been responsible for the design, development, testing, production, manufacturing, assembly, marketing, licensing, and sale of each identified Maxim chip. Surely it cannot be that difficult to approach these few Maxim employees and ask them what their responsibilities have been with respect to the functions listed for the identified Maxim chips.

In addition, Maxim has failed to provide any information regarding past employees within the WCBU and their responsibilities with respect to the identified Maxim chips, as requested in Interrogatory No. 7. Such information is unquestionably discoverable.

37374_1

**Ex. G-4**

DAY CASEBEER
MADRID & BATCHELDER LLP

Chad S. Campbell
October 1, 2003
Page 5

Please confirm that Maxim will supplement its response to Interrogatory No. 7 to provide the missing information immediately.

### Interrogatory No. 8

Interrogatory No. 8 seeks information regarding the compatibility of Maxim chips with MSMs and MSM architectures. Maxim has failed to provide a substantive response to this interrogatory, relying instead upon its representation that it will produce and designate responsive documents under Rule 33(d).

Again, in addition to the concerns I already have raised regarding Maxim's Rule 33(d) designations, we do not understand why Maxim cannot provide a narrative response to this interrogatory. We fail to see how the burden to Maxim of determining the extent to which its chips are compatible with MSMs and MSM architectures is substantially the same as for QUALCOMM, when it was Maxim who designed its chips to work with MSMs and MSM architectures. Please provide us immediately with a narrative response to Interrogatory No. 8.

### Interrogatories Nos. 9-11

Maxim has refused to provide any substantive response to Interrogatories Nos. 9-11 beyond the information provided in response to Interrogatories Nos. 2 and 3. Maxim's primary basis for refusing to provide complete responses to Interrogatories Nos. 9-11 appears to be that "detailed damages discovery is premature at this point in the case."

As an initial matter, is unclear to us whether Maxim intends to provide information responsive to Interrogatories Nos. 9-11 at *any* point during the litigation. Although Maxim makes the general statement that it will produce "damages-related discovery" at some unspecified future date, it does not state whether this discovery, when produced, will provide all of the information requested in Interrogatories Nos. 9-11. Please clarify Maxim's position in this regard.

In addition, we disagree that damages discovery is premature at the present time. Maxim has not filed any motion to bifurcate the issue of damages from liability in the case, nor has the Court made any indication that damages discovery should proceed on a separate schedule from liability discovery.

Furthermore, Maxim has improperly characterized Interrogatory No. 9 as "damages discovery." Interrogatory No. 9 requests information regarding potential and actual sales, offers to sell, licensing, and distribution of Maxim chips – information that is directly relevant to the issue of infringement as well as damages.

37374_1

**Ex. G-5**

DAY CASEBEER
MADRID & BATCHELDER LLP

Chad S. Campbell
October 1, 2003
Page 6

Please provide complete, substantive responses to Interrogatories Nos. 9-11 immediately.

### Interrogatory No. 12

Maxim has generally designated under Rule 33(d) agreements that it already has produced to QUALCOMM for its response to Interrogatory No. 12. As already discussed, however, Rule 33(d) requires Maxim to specifically identify the documents it designates as responsive to the interrogatory, rather than referring generally to documents that have been or will be produced. Therefore, please provide us immediately with an identification, by Bates number, of the specific agreements to which you are referring.

In addition, Maxim has not identified any oral agreements between QUALCOMM and Maxim in its response to this interrogatory. Please either confirm that no such oral agreements exist, or provide all responsive information regarding each such oral agreement.

Also, Maxim has not identified any proposed or potential agreements between QUALCOMM and Maxim, as requested in this interrogatory. Please either confirm that no such proposed or potential agreements exist, or provide all responsive information regarding each such proposed or potential agreement.

Finally, Maxim has failed to provide a complete response to this interrogatory by failing to identify, for each actual, proposed, and potential agreement: 1) each document concerning that agreement, 2) the three Maxim employees most knowledgeable regarding that agreement, and 3) the three QUALCOMM employees with whom those Maxim employees spent the most time negotiating that agreement. Please provide us with this information immediately.

### Interrogatories Nos. 13 and 14

Interrogatories Nos. 13 and 14 ask Maxim to identify each prior art publication and product known to Maxim, and to identify those portions of the subject matter claimed in the patents-in-suit that are described in each piece of prior art. We believe that Maxim should identify now each responsive prior art publication and product. With respect to mapping onto the patent claims at issue the elements of each piece of prior art, however, we believe that this interrogatory should be treated in the same fashion as Maxim's Interrogatory No. 2, which asks QUALCOMM to map onto the patent claims at issue the elements of Maxim's products or methods. That is, we believe that the parties should postpone the disclosure of such detailed information regarding the parties' respective infringement and invalidity theories until the Court has construed the claims. Moreover, we do not believe that Maxim should be heard to press for an immediate and full response to its Interrogatory No. 2 while refusing to provide an immediate and full response to QUALCOMM's Interrogatories Nos. 13 and 14. Maxim cannot have it both ways.

37374_1

**Ex. G-6**

DAY CASEBEER
MADRID & BATCHELDER LLP

Chad S. Campbell
October 1, 2003
Page 7

In addition, for its response to Interrogatory No. 14 Maxim has represented that it will produce and designate "prior art documents" under Rule 33(d). We believe that a complete response to this interrogatory cannot be provided simply through the designation of "prior art documents." Interrogatory No. 14 asks Maxim to identify each *product* known to Maxim embodying all or part of the subject matter claimed in the patents-in-suit. Such products may not necessarily be identifiable simply by reference to prior art documentation. Therefore, please provide us immediately with a narrative response to Interrogatory No. 14.

### Interrogatory No. 15

In its response to Interrogatory No. 15, Maxim has stated that it "will provide the basic factual underpinning of each affirmative defense, to the extent the facts presently are known to Maxim." With respect to Maxim's first affirmative defense, however, Maxim has referred to only an "investigation of specific items of prior art and the motivation to combine them," which we understand to refer to a § 103 invalidity defense. In its answer and counterclaim, however, Maxim asserted as its first affirmative defenses that the patents-in-suit are invalid under §§ 101, 102, and 112, in addition to § 103. Please confirm that Maxim has no present knowledge of any "factual underpinning" for any invalidity defense under §§ 101, 102, or 112.

Also, Maxim has failed to identify all information currently known to it that detracts in any way from its affirmative defenses, as requested in this interrogatory. Please provide us immediately with this information.

### Interrogatory No. 17

Interrogatory No. 17 asks whether Maxim has relied upon or is relying upon any opinion of counsel regarding the patents-in-suit. Maxim has refused to provide a substantive response to this interrogatory, claiming that this interrogatory is inconsistent with Paragraph 3 of the Court's Case Management Conference Order. Paragraph 3 of the Order sets a deadline for Maxim to disclose "if it intends to rely on an opinion of counsel as part of a defense to a claim of willful infringement." The Order says nothing, however, about whether Maxim now *actually* relies, or has in the past *actually* relied, upon any opinion of counsel regarding the patents-in-suit. Therefore, please provide a substantive response to Interrogatory No. 17 to the extent it calls for information regarding any current or past *actual* reliance by Maxim on any opinion of counsel.

### Interrogatory No. 18

Maxim has refused to provide information regarding oral communications responsive to Interrogatory No. 18, on the grounds of undue burden. We do not see how it would be unduly burdensome for Maxim to identify any non-privileged oral communications involving Maxim and

37374_1

DAY CASEBEER
MADRID & BATCHELDER LLP

Chad S. Campbell
October 1, 2003
Page 8

concerning any of the patents-in-suit or this litigation.  To the extent that Maxim is aware of any such oral communications, we expect Maxim to supplement its response to Interrogatory No. 18 to identify those communications.

In addition, Maxim has stated that it will produce in response to this interrogatory "unprivileged documents that refer or relate to Qualcomm or to the patents-in-suit."  Please confirm that Maxim's response does identify any non-privileged communications that refer or relate to *this litigation*, as requested in the interrogatory.

### Verification of Interrogatory Responses

Finally, we have not received a verification of Maxim's responses to QUALCOMM's Interrogatories Nos. 1-18.  Please provide us with the verification.  We will be sending you a verification of QUALCOMM's responses to Maxim's Interrogatories Nos. 1-3 shortly.

I would like to schedule a time to meet and confer with you regarding the issues raised in this letter. I am available after 2:00 in the afternoon on October 6, and after 3:00 in the afternoon of October 7. Please let me know if either of these time slots works for you.

I look forward to hearing from you.

Best regards,

DAY CASEBEER
MADRID & BATCHELDER LLP

James R. Batchelder

37374_1

**Ex. G-8**

BROWN & BAIN, P.A.

Attorneys at Law

CHAD S. CAMPBELL
T(602) 351-8393
F(602) 648-7193
campbell@brownbain.com

October 7, 2003

Qualcomm v. Maxim (Case No. 02 CV 2429 B(JFS))

Dear Jim:

This letter responds to the topics raised in your October 1, 2003 letter.

**Objection E**

Your October 1, 2003 letter states that "information regarding Maxim products currently in development is directly relevant to the case, as such products can still infringe the patents-in-suit regardless of their stage of development." That assertion seems mistaken. Absent the making, importing, selling or offering to sell the complete invention covered by at least one claim of a patent, there is no theoretical basis for asserting infringement. In general, proposals, concepts and designs that have not been reduced to fabricated products are not capable of infringement. In this particular case, the limitations of the patent claims Qualcomm is asserting cannot be met without a completed cell phone or radio system. Individual integrated circuit chips that have not been used anywhere, including in a cell phone or radio system, cannot in good faith be accused of infringement. In any event, Maxim is not withholding discovery under Objection E with respect to any product that has been fabricated and sold or offered for sale.

**Objections F, G, H, and I**

Information has not been withheld pursuant the objections about which you have inquired, except as specifically disclosed in those objections. In other words, Maxim generally has limited its answers about "Maxim Chips" to the particular products identified by Qualcomm.

**Qualcomm Interrogatory No. 2**

The response to Interrogatory No. 2 lists the individuals that have the most significant knowledge about the products identified. Individuals with meaningful knowledge were not excluded in preparing the response. Maxim does expect, however, to supplement its answers with respect to manufacturing, assembly and production when it has collected some pending additional information on that subject.

**Qualcomm Interrogatory No. 5**

Maxim has objected to the proposed "country-by-country" breakdown of "first" efforts to make, use, or sell products. A desire to gather information to support a possible future claim based on a foreign patent does not justify the pursuit of discovery in this case. We fail to see

MAILING ADDRESS
P.O. BOX 400
PHOENIX, ARIZONA 85001-0400

STREET ADDRESS
2901 NORTH CENTRAL AVENUE
PHOENIX, ARIZONA 85012-2788

T(602) 351-8000
F(602) 648-7000
www.brownbain.com

Ex. H-1

James R. Batchelder, Esq.                    -2-                    October 7, 2003

how the requested breakdown would be relevant to this case.  Maxim is willing, however, to supplement its response to identify facts and circumstances (including the location) of the first production, use, sale, license, or offer for sale or license of each Maxim product that Qualcomm accuses of infringing the Patents-in-Suit.

### Qualcomm Interrogatory No. 6

The many detailed subparts of Interrogatory No. 6 cannot be answered without reference to records, which Maxim is now in the process of gathering.  Once the documents regarding the various testing questions that the interrogatory raises have been collected, we will supplement the response to Interrogatory No. 6 accordingly.

### Qualcomm Interrogatory No. 7

In answer to your questions, you are correct that the description of the WCBU provided in Maxim's answer reflects the current management staff, which has remained stable over time (although some listed managers joined the company later than others).  Interrogatory No. 7 did not request identification of the specific responsibilities of individuals within the business unit. For information about product-specific responsibilities of staff members within the group, however, please refer to Maxim's answer to Qualcomm Interrogatory No. 2, which Maxim hereby incorporates in the response to Interrogatory No. 7.  The names of former employees were not responsive to the "management level" inquiry posed by Interrogatory No. 7 because the management level team has been stable.  The names of two non-employees (Henk Nauta and Phil Marzulf) were identified, however, in response to Interrogatory No. 2.  We are in the process of finding last known contact data for them, and will supplement to provide it when we have located the information.

### Qualcomm Interrogatory No. 8

In its answer to Interrogatory No. 3, Maxim has already identified (on a product-by-product basis) the applications in which manufacturers have used an MSM and a Maxim device in the same system.  Maxim hereby incorporates that answer into its response for Interrogatory No. 8.

To the extent Qualcomm seeks a response beyond the actual uses to which Maxim products have been put, we believe that Qualcomm occupies the best position to make hypothetical assessments about compatibility with MSM devices in various operating environments.  First, Qualcomm has superior access to the electrical properties that must be met for a product to be compatible with a particular MSM device in any given operating environment.  Second, the electrical specifications to which Maxim has designed its products are reflected in its published product data sheets, which can be downloaded from Maxim's website at http://www.maxim-ic.com.  To the extent Qualcomm needs additional information about electrical properties, Maxim is in the process of collecting for production (subject to the resolution of concerns regarding confidentiality and access about which I have written

**Ex. H-2**

James R. Batchelder, Esq.                    -3-                    October 7, 2003

previously) design engineering specifications for the products and related design and development materials.

### Qualcomm Interrogatories Nos. 9-11

As your October 1 letter correctly observes, Maxim has already disclosed on a product-by-product basis, the applications into which its parts have been sold. The remaining detailed financial information requested by Interrogatories Nos. 9-11 has no material purpose other than damages. As suggested in previous correspondence, Maxim proposes that the parties exchange detailed financial information later in the case, when it is more likely to be needed for actual discovery events and case preparation. At this point of the case, we do not yet know which products Qualcomm accuses of infringement or whether Qualcomm will even pursue a claim for lost profits (among other matters that will determine the type of financial information material to a resolution of the dispute). We suggest the parties agree on a target date for the exchange of relevant financial information to occur three months before the initial round of expert reports are due, but remain open to other proposals. Ahead of the target date, we would expect to work with you to resolve the precise nature of what will be disclosed.

### Interrogatory No. 12

Maxim will supplement its response to Interrogatory No. 12.

### Interrogatories Nos. 13-14

Maxim does not seek to have it both ways. Indeed, Maxim is in the process of gathering relevant prior art documents for production to Qualcomm. Maxim is also willing to provide a more detailed explanation of its position with respect to such art as soon as Qualcomm has answered Interrogatories Nos. 1-5. We renew the invitation for Qualcomm to disclose what it now knows about its allegation that Maxim has infringed the Patents-in-Suit.

### Interrogatory No. 15

Maxim's first affirmative defense is based on the invalidity of the Patents-in-Suit for failure to comply with one or more of the statutory requirements of patentability. The manner in which Qualcomm will seek to apply the patents to Maxim's products or methods and the prosecution-related discovery that is being sought from Qualcomm are likely to influence and inform Maxim's defense. Accordingly, Maxim will supplement its response after obtaining such initial discovery from Qualcomm. Finally, to the extent that Maxim's defense rests on the meaning of claim terms, Maxim's positions with respect to those matters will be disclosed under the schedule set out in the September 18, 2003 Case Management Order.

### Interrogatory No. 17

The September 18, 2003, Case Management Order provides that Maxim "shall disclose in writing if it intends to rely on an opinion of counsel as part of a defense to a claim of willful

James R. Batchelder, Esq.                    -4-                    October 7, 2003

infringement" by July 1, 2004.  Maxim will comply with the order.  In the event that Maxim so elects, Qualcomm will then have an opportunity to conduct discovery regarding the circumstances of any such opinion, including Maxim's past or actual reliance upon it.

### Interrogatory No. 18

Maxim's response was not intended to exclude unprivileged documents that reference the litigation.  If such documents are uncovered, they will be produced.  With respect to oral communications "CONCERNING any of the QUALCOMM PATENTS or any part of QUALCOMM'S LAWSUIT," given the breadth assigned to those defined terms, the burden of attempting to gather the responsive information is out of proportion to any conceivable discovery benefit that would be served.  To provide but one illustration, the definition of "CONCERNING" appears to sweep in any conversation in which one of the Maxim devices for which Qualcomm is presently seeking discovery has been discussed.  In its present form, the interrogatory is simply too broad.

### Verification

Maxim will furnish a verification shortly.

Sincerely,

*Chad S. Campbell*

Chad S. Campbell

James R. Batchelder, Esq.
  *Day Casebeer Madrid & Batchelder LLP*
    20300 Stevens Creek Blvd., Suite 400
      Cupertino, California  95014

CAM/mw

FACSIMILE

244771_1

**Ex. H-4**

# DAY CASEBEER
## MADRID & BATCHELDER LLP

20300 Stevens Creek Blvd., Suite 400
Cupertino, CA 95014
Telephone: (408) 873-0110
Facsimile:  (408) 873-0220

Richard C. Lin
(408) 342-4589
rlin@daycasebeer.com

October 9, 2003

VIA FACSIMILE & U.S. MAIL

Chad S. Campbell
Brown & Bain
2901 North Central Avenue
Suite 2000
Phoenix, AZ 85012

Re:     *QUALCOMM Incorporated v. Maxim Integrated Products, Inc.*

Dear Chad:

I write in response to your October 7, 2003 letter to Jim Batchelder regarding Maxim's responses to QUALCOMM's First Set of Interrogatories.  We hope to discuss these issues with you during our meet-and-confer session scheduled for today at 3:00 p.m.

### Designation of Documents under Rule 33(d)

Your October 7 letter did not fully address QUALCOMM's concerns regarding Maxim's attempt to invoke Rule 33(d) in responding to QUALCOMM Interrogatories Nos. 1, 3, 4, 5, 6, 8, 13, 14, and 18.  The deficiencies in Maxim's Rule 33(d) designations already have been noted in Jim Batchelder's October 1, 2003 letter to you, so I will not repeat them here.  QUALCOMM reiterates its request, however, that Maxim confirm that it will:

- Identify, by Bates number, the specific documents it wishes to designate for its response to Interrogatories Nos. 1, 3, 4, 5, 6, 8, 13, 14, and 18;

- Produce those specifically designated documents to QUALCOMM; and

- Represent that all of the information requested in Interrogatories Nos. 1, 3, 4, 5, 6, 8, 13, 14, and 18, and to which Maxim is responding with Rule 33(d) designations, is in fact available within the designated documents.

Please confirm that by October 16, 2003 Maxim will do so.

39058_1

**Ex. I-1**

DAY CASEBEER
MADRID & BATCHELDER LLP

Chad S. Campbell
October 9, 2003
Page 2

## Objection E

You state in your letter that "Maxim is not withholding discovery under Objection E with respect to any product that has been fabricated and sold or offered for sale." Your letter fails to state, however, whether Maxim is withholding discovery regarding any product that has been 1) fabricated but not sold or offered for sale, or 2) offered for sale but not yet fabricated. Such products can be still be infringing, and are therefore legitimate subjects for discovery. Please confirm that Maxim is not withholding discovery regarding any such products based on Objection E.

More generally, your letter seems to suggest that QUALCOMM is not entitled to discovery for Maxim products still in development. QUALCOMM disagrees. To the extent that Maxim is developing products that may be infringing once reduced to actual products, QUALCOMM is entitled to know this information for many reasons, including to determine whether it needs to pursue preliminary injunctive relief to prevent such conduct. Please confirm that Maxim is not withholding discovery regarding any products currently in development based on Objection E.

## Objections F, G, H, and I

QUALCOMM requests clarification of the statement in your letter that "Maxim generally has limited its answers about 'Maxim Chips' to the particular products identified by Qualcomm." Does this mean that Maxim has limited its answers to only those Maxim products for which QUALCOMM has identified specific part numbers in the definitions of "MAXIM RECEIVER," "MAXIM TRANSMITTER," and "MAXIM POWER AMP" in its first set of interrogatories? And has Maxim included in its answers responsive information pertaining to all Maxim Zero IF products – that is, all Maxim transmit and receive chip products capable of performing a "direct upconversion from a baseband frequency to a radio frequency or direct downconversion from a radio frequency to a baseband frequency" – as requested by QUALCOMM?

## Interrogatory No. 2

Your letter states that Maxim intends to supplement its answer to Interrogatory No. 2 with respect to manufacturing, assembly, and production. Does this mean that Maxim intends to supplement with a narrative answer providing all of the information requested with respect to manufacturing, assembly, and production? Please confirm that by October 16 Maxim will do so. Also, is Maxim's response to Interrogatory No. 2 now complete with respect to the identification of persons most knowledgeable regarding the 1) design, development, and testing of each Maxim chip, 2) marketing, licensing, and sale of each Maxim chip, and 3) plans, strategies, and competitive analyses for each Maxim chip?

39058_1

DAY CASEBEER
MADRID & BATCHELDER LLP

Chad S. Campbell
October 9, 2003
Page 3

**Interrogatory No. 5**

QUALCOMM is willing to narrow the scope of Interrogatory No. 5 to a description of the facts and circumstances surrounding the first production, use, sale, license, and offer for sale or license of each MAXIM CHIP (as defined in QUALCOMM's first set of interrogatories) in: 1) the United States, and 2) anywhere else in the world (identifying the country). This description should include an identification of the dates and persons associated with each event, as set forth in the interrogatory. Please let us know if Maxim is willing to agree to this narrowed scope, and whether Maxim will supplement its answer accordingly by October 16

**Interrogatory No. 6**

Your letter states that Maxim will supplement its response to Interrogatory No. 6 once the appropriate documents have been collected. Does this mean that Maxim will supplement with a narrative response that provides all of the information requested in Interrogatory No. 6? Please confirm that by October 16 Maxim will do so.

**Interrogatory No. 7**

QUALCOMM is puzzled by the statement in your letter that the current management staff of Maxim's WCBU "has remained stable over time." In Maxim's original response to Interrogatory No. 7, Maxim stated that it would be "unreasonably burdensome and onerous" to answer this interrogatory because it would require preparation of "at least 2,592 separate detailed organizational descriptions (one for each of 36 different products times 9 different functions times 8 different years)." Maxim then went on to suggest that the WCBU has "primary responsibility" for the identified Maxim products.

But if one business unit, the WCBU, has been responsible for all of the products identified by Maxim, and the management team of the WCBU has remained the same for the past eight years, then QUALCOMM does not understand why Interrogatory No. 7 would require Maxim to prepare at least 2,592 separate organizational descriptions.

Please confirm that, for each year from 1996 to the present, the WCBU has been responsible for the design, development, testing, production, manufacturing, assembly, marketing, licensing, and sale of each Maxim product identified by Maxim in response to QUALCOMM Interrogatories Nos. 1 and 2. In addition, please confirm that, for each year from 1996 to the present, the management staff of the WCBU has consisted solely of the individuals identified by Maxim in its original response to Interrogatory No. 7. Finally, please identify, for each year from 1996 to the present, every non-management employee that was or is directly supervised by the management staff of the WCBU, as requested in this interrogatory.

39058_1

**Ex. I-3**

DAY CASEBEER
MADRID & BATCHELDER LLP

Chad S. Campbell
October 9, 2003
Page 4

## Interrogatory No. 8

QUALCOMM does not understand Maxim's objections to Interrogatory No. 8. This interrogatory seeks any information available to *Maxim* regarding the compatibility of its products with any MSM and MSM architecture. Please confirm that by October 16 Maxim will provide all responsive information available to it with respect to this interrogatory.

Additionally, Interrogatory No. 8 asks for an identification of all documents regarding the compatibility of Maxim chips with MSMs and MSM architectures, as well as the three Maxim employees most knowledgeable regarding the compatibility of its products with any MSM and MSM architecture. Please confirm that by October 16 Maxim will supplement its answer to this interrogatory to provide an identification of these documents and individuals.

## Interrogatory Nos. 9-11

Your letter incorrectly states that the information requested by Interrogatories Nos. 9-11 has no material purpose other than damages. As we have previously pointed out, Interrogatory No. 9 seeks information directly relevant to liability. Specifically, information regarding the proposed, potential, or actual sale, offer to sell, license, and distribution of Maxim chips is relevant to the determination of the extent of Maxim's infringing activity. Although Maxim appears to have provided some information regarding actual *uses* of Maxim products by third parties in response to Interrogatory No. 3, this information is not fully responsive to the information requested in Interrogatory No. 9.

In addition, QUALCOMM does not believe that damages discovery should be postponed to a later date. QUALCOMM's position is that fact discovery relating to damages issues should proceed immediately, in order to ensure that information necessary for QUALCOMM's damages analysis can be uncovered before the discovery cut-off date.

## Interrogatory No. 12

Your letter states that Maxim will supplement its response to Interrogatory No. 12. Please confirm that by October 16 Maxim will supplement with a narrative response that provides all of the information requested in Interrogatory No. 12.

## Interrogatories Nos. 13 and 14

Your letter states that Maxim is in the process of gathering relevant prior art documents for production to QUALCOMM. Please confirm that by October 16 Maxim will produce these documents.

39058_1

**Ex. I-4**

DAY CASEBEER
MADRID & BATCHELDER LLP

Chad S. Campbell
October 9, 2003
Page 5

Also, your letter states that Maxim is willing to provide "a more detailed explanation of its position with respect to such art as soon as Qualcomm has answered Interrogatories Nos. 1-5." Does this mean that Maxim is willing to provide all information responsive to Interrogatories Nos. 13 and 14? Also, does this mean that on the same day that QUALCOMM provides a full narrative response to Maxim Interrogatories Nos. 1-5, Maxim will provide a full narrative response to QUALCOMM's Interrogatories Nos. 13 and 14?

## Interrogatory No. 15

Your letter fails to address the concerns raised in Jim Batchelder's October 1 letter with respect to Interrogatory No. 15. Specifically, in that letter QUALCOMM requested Maxim to identify the "factual underpinning" currently known to it for any §§ 101, 102, and 112 invalidity defenses.

If, as discovery progresses, Maxim identifies additional facts that affect its affirmative defenses, then Maxim is certainly entitled to supplement its response to Interrogatory No. 15 as these new facts are uncovered. This, however, does not relieve Maxim of the duty to respond to Interrogatory No. 15 now by disclosing any facts *currently known* to it that it believes support any of its affirmative defenses.

In addition, QUALCOMM repeats its request that Maxim identify all information currently known to it that *detracts* in any way from its affirmative defenses, as requested in this interrogatory. If Maxim is unaware of any such information, please state so in the interrogatory response.

## Interrogatory No. 17

*Please clarify Maxim's position with respect to Interrogatory No. 17. Does Maxim refuse to disclose now whether it has in the past relied upon, or is currently relying upon, any opinion of counsel regarding the patents-in-suit?*

## Interrogatory No. 18

QUALCOMM does not understand Maxim's position that it would be unduly burdensome to respond to Interrogatory No. 18 with respect to oral communications "CONCERNING any of the QUALCOMM PATENTS or any part of QUALCOMM'S LAWSUIT." Maxim made no objection that it would be unduly burdensome to respond to Interrogatory No. 18 with respect to *written* communications "CONCERNING any of the QUALCOMM PATENTS or any part of QUALCOMM's LAWSUIT." In fact, Maxim agreed that it would identify and produce any such written communications. Why is it reasonable for Maxim to identify any written communications regarding the subject matter requested in Interrogatory No. 18, but unreasonable for Maxim to identify any oral communications regarding the exact same subject matter?

39058_1

DAY CASEBEER
MADRID & BATCHELDER LLP

Chad S. Campbell
October 9, 2003
Page 6

In addition, QUALCOMM is confused by the example cited in your letter.  Your letter states that
the definition of "CONCERNING" would include "any conversation in which one of the Maxim
devices for which Qualcomm is presently seeking discovery has been discussed."  But this fails to
take into account the rest of the language of the interrogatory.  Because this interrogatory seeks only
those communications "CONCERNING any of the QUALCOMM PATENTS or any part of
QUALCOMM'S LAWSUIT," conversations regarding Maxim devices (even if they are devices for
which QUALCOMM is seeking discovery) would not be covered, since the subject of Maxim
devices alone does not concern the patents-in-suit or the present litigation.  Hopefully this clears up
any confusion you may have had regarding the scope of this interrogatory.

We look forward to discussing these issues with you during our meet-and-confer session.

Best regards,

DAY CASEBEER
MADRID & BATCHELDER LLP

*Richard L.*

Richard C. Lin

RCL:sv

39058_1

**Ex. I-6**

```
*********************
***   TX REPORT   ***
*********************

TRANSMISSION OK

TX/RX NO            3236
CONNECTION TEL       60#1701#002#16026487193
CONNECTION ID
ST. TIME            10/09 09:43
USAGE T              02'21
PGS. SENT              7
RESULT              OK
```

# DAY CASEBEER
## MADRID & BATCHELDER LLP

20300 Stevens Creek Blvd., Suite 400                 Telephone: (408) 873-0110
Cupertino, California 95014                          Facsimile: (408) 873-0220

# FACSIMILE TRANSMISSION

**DATE:  OCTOBER 9, 2003**                           **NO. OF PAGES: 7**

## PLEASE DELIVER TO:

**CHAD S. CAMPBELL**
BROWN & BAIN

**PHONE NO.**   (602) 351-8000      **FAX NO.**   (602) 648-7193

**FROM:**   RICHARD C. LIN

**CLIENT NO. :**    1701-002

**MESSAGE:**

### ORIGINAL(S) WILL NOT BE SENT

Ex. I-7

Mark C. Mazzarella (082494)
Dana J. Dunwoody (119696)
Michael D. Fabiano (167058)
MAZZARELLA, DUNWOODY & CALDARELLI, LLP
550 West "C" Street, Suite 700
San Diego, California 92101-8575
Telephone: (619) 238-4900
Facsimile: (619) 238-4959

Michael F. Bailey
Chad S. Campbell
BROWN & BAIN, P.A.
2901 North Central Avenue
Post Office Box 400
Phoenix, Arizona 85001-0400
Telephone: (602) 351-8000
Facsimile: (602) 648-7000

Attorneys for Defendant/Counterclaimant
MAXIM INTEGRATED PRODUCTS, INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUALCOMM INCORPORATED,<br><br>Plaintiff,<br><br>vs.<br><br>MAXIM INTEGRATED PRODUCTS, INC.,<br><br>Defendant. | No. 02 CV 2429 BTM (JFS)<br><br>**MAXIM'S REQUEST FOR PRODUCTION NO. 1** |
| MAXIM INTEGRATED PRODUCTS, INC.,<br><br>Counterclaimant,<br><br>vs.<br><br>QUALCOMM INCORPORATED,<br><br>Counter-defendant. | |

Ex. J-1

1    Pursuant to Fed. R. Civ. P. 34, Maxim Integrated Products, Inc. requests that Qualcomm

2    Incorporated produce the following documents and things for inspection and copying at the

3    offices of Brown & Bain, P.A., 2901 N. Central Avenue, Phoenix, Arizona 85013, within thirty

4    (30) days of the date of service of this request.

5                                    **DEFINITIONS**

6    A.    "Qualcomm" includes (i) Qualcomm Incorporated; (ii) any and all predecessor or

7    successor companies, corporations, divisions, or business entities of Qualcomm Incorporated;

8    (iii) any subsidiary, division, company, related corporation or other business entity owned in

9    whole or in part by Qualcomm Incorporated (at any time); (iv) any parent, related corporation or

10   other business entity for which the ownership is or was in common with the ownership of

11   Qualcomm Incorporated (in whole or in part) at any time; (v) any person who acts or has acted

12   for any of the foregoing entities.

13   B.    "Maxim" includes Maxim Integrated Products, Inc. and any person who acts or

14   has acted on its behalf.

15   C.    The term "'063 Patent" means United States Patent No. 5,722,063 entitled

16   "Method and apparatus for increasing receiver immunity to interference."

17   D.    The term "'341 Patent" means United States Patent No. 5,732,341 entitled

18   "Method and apparatus for increasing receiver immunity to interference."

19   E.    The term "Patents-In-Suit" means one or both of the '063 Patent and the '341

20   Patent.

21   F.    The term, "Foreign Counterpart" means any patent issued to Qualcomm or any

22   patent applications by Qualcomm in any country other than the United States, in which

23   Qualcomm claims, mentions, or discusses, in whole or in part, the subject matter of any of the

24   claims of the Patents-In-Suit.

25   G.    "Qualcomm Device" means any product, designed, made, offered for sale and/or

26   sold by Qualcomm, at any time, that can be used in the "transmission, reception and processing of

27   radio signals by wireless telephones" (as that phrase is used in paragraph 10 of the First Amended

28   Complaint) where one or more of the following conditions is met:  (a) the device embodies any

1   claim of the patents in suit; (b) the manufacture of the device practices any claim of the patents in

2   suit (whether by direct, contributory or inducement of infringement); (c) the sale or offer to sell

3   the device practices any claim of the patents in suit (whether by direct, contributory or

4   inducement of infringement), (d) the combination of the device with other "integrated circuits or

5   modules for use in wireless telephones" (as that phrase is used in paragraph 11 of the First

6   Amended Complaint) practices any claim of the patents in suit.

7       H.    "Document" has the same meaning as in Fed. R. Civ. P. 34. By way of illustration

8   and not limitation, documents include e-mail and other information in electronic form. As used

9   herein, document includes all drafts, versions or copies of an item that differ in any way from

10   each other (whether or not sent or received).

11       I.    The term "license" means any authorization to make, have made, use or sell any

12   product (i) the unlicensed manufacture, use, sale or importation of which would infringe any

13   issued United States or foreign patent, (ii) that is claimed in any United States or foreign patent

14   application, or (iii) that is the subject of a trade secret. A license includes but is not limited to an

15   agreement (whether in the form of a grant, sublicense, bilateral contract, option, offer to make a

16   unilateral contract, stipulation in a legal action or other proceeding, statement of representation

17   that patent rights will not be asserted with respect to a particular subject matter, or agreement to

18   sell or distribute any patented product) and any schedule, addendum, or amendment thereto, and

19   any modification thereof.

20       J.    "Maxim Accused Product or Method" means any product or method employed,

21   made, designed, sold or offered for sale by Maxim that Qualcomm contends infringes the Patents-

22   in-Suit (whether by direct, contributory or inducement of infringement).

23                         **INSTRUCTIONS**

24       1.    A reference to a corporation or other entity shall be construed to include the

25   persons or entities through which the referenced corporation or other entity acts.

26       2.    Each document shall be produced along with all drafts thereof in its entirety,

27   without abbreviation or redaction, in the sequence and organization in which the document has

28   been maintained.

3.   All responsive documents stored in electronic form shall be produced together with the generation date, file name, and file location.

4.   Should Qualcomm seek to withhold any document based on some limitation of discovery (including, without limitation, a claim of privilege), supply a list of the documents for which limitation of discovery is claimed and state separately for each such document:  (i) the claimed grounds for limitation of discovery (e.g., "attorney-client privilege"); (ii) the identity of each author, writer, sender or initiator; (iii) the organization, if any, with which each author, writer, sender or initiator was then connected; (iv) the identity of each recipient, addressee, distributee, or party that received or was intended to receive the document; (v) the entity, if any, with which each recipient, addressee, distributee, or party in subpart 4(iii) was then connected; (vi) the date of creation or transmittal indicated on the document, or an estimate of that date, indicated as such, if no date appears on the document; and (vii) the general nature and subject matter of the document sufficient to permit the claimed grounds for limitation of discovery to be tested.

5.   The words "and" and "or" shall be construed conjunctively or disjunctively, whichever makes the request herein more inclusive.

6.   The words "any" and "each" shall be construed to encompass "any," "any one of," "each," or "all," whichever makes the request herein more inclusive.

## DOCUMENTS TO BE PRODUCED

1.   Each license agreement or other contract that relates to the Patents-in-Suit effective at any time from 1997 to the present between Qualcomm and any one or more of the following or their divisions, subsidiaries, parents or affiliated companies:  "Kyocera" (including without limitation Kyocera Wireless Corp. and Kyocera Corporation); "Samsung" (including without limitation Samsung Electronics Ltd. and Samsung America, Inc.); and "Motorola" (including without limitation Motorola Inc.).

1   Dated:  July 30, 2003.

2                                      BROWN & BAIN, P.A.

3

4                                      By  *Chad S. Campbell*

`5                                          Michael F. Bailey
                                          Chad S. Campbell
6                                          2901 North Central Avenue
                                          Post Office Box 400
7                                          Phoenix, Arizona  85001-0400

8                                          Mark C. Mazzarella
                                          Dana J. Dunwoody
9                                          Michael D. Fabiano
                                          MAZZARELLA, DUNWOODY &
10                                         CALDARELLI, LLP
                                          550 West "C" Street, Suite 700
11                                         San Diego, California  92101-8575
12
13                                         Attorneys for Maxim Integrated Products, Inc.

14   237701_1

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MAXIM'S REQUEST FOR PRODUCTION NO. 1          - 5 -                      No. 02 CV 2429 BTM (JFS)

**Ex. J-5**

1

## PROOF OF SERVICE

2     I am a citizen of the United States.  My business address is Brown & Bain, P.A., 2901 North

3  Central, Suite 2000, Phoenix, Arizona 85012.  I am over 18 years of age, and not a party to the

4  within action.  I am readily familiar with the business practice at my place of business for collection

5  and processing of correspondence for personal delivery, for mailing with United States Postal

6  Service, for facsimile, and for overnight delivery services.

7     On July 30, 2003, I caused a copy of the following document(s):

8  **MAXIM'S REQUEST FOR PRODUCTION NO. 1**

9  to be served on the interested parties in this action as follows:

10    James R. Batchelder, Esq.                    Attorneys for Defendant
      Day Casebeer Madrid & Batchelder LLP          QUALCOMM INCORPORATED
11    20300 Stevens Creek Blvd., Suite 400
      Cupertino, California  95014

12
      ☒     (PERSONAL HAND DELIVERY)  Personal to the addressee stated above.
13
      Gerald L. McMahon, Esq.                      Attorneys for Defendant
14    David J. Zubkoff, Esq.                       QUALCOMM INCORPORATED
      Seltzer Caplan McMahon Vitek
15    2100 Symphony Towers
      750 B Street
16    San Diego, California  92101
      Telephone: (619) 685-3003
17    Facsimile: (619) 685-3100

18    Louis M. Lupin, Esq.                         Attorneys for Defendant
      Alexander H. Rogers, Esq.                    QUALCOMM INCORPORATED
19    Roger Martin, Esq.
      QUALCOMM Incorporated
20    5775 Morehouse Drive
      San Diego, California  92121
21    Telephone: (858) 658-1121
      Facsimile: (858) 658-2100

22
      ☒     (BY FACSIMILE)  Such document was faxed to the facsimile transmission machine
23          with the facsimile machine number(s) stated above.  Upon completion of the
            transmission, a transmission report was received showing the transmission was
24          complete and without error.

25    ☒     (BY MAIL)  Such correspondence was deposited, postage fully paid, with the United
            States Postal Service on the same day in the ordinary course of business.
26

27

28

**Ex. J-6**

1    I declare under penalty of perjury under the laws of the United States that the foregoing is

2  true and correct.  Executed on July 30, 2003 at Phoenix, Arizona.

3

4                                    _Chad S. Campbell_

5                                    Chad S. Campbell

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ex. J-7

FILED

03 SEP 18 AM 10: 26

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

DEPUTY:

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUALCOMM INC., | Civil No. 02CV2429 B(JFS) |
| Plaintiff, | CASE MANAGEMENT CONFERENCE ORDER REGULATING DISCOVERY AND OTHER PRETRIAL PROCEEDINGS |
| v. | |
| MAXIM INTEGRATED PRODUCTS INC., | (Fed. R. Civ. P. 16) |
| Defendants. | (Local Rule 16.1) (Fed. R. Civ. P. 26) |

Pursuant to Rule 16 of the Federal Rules of Civil Procedure, a Case Management Conference was held on <u>July 30, 2003</u>. After consulting with the attorneys of record for the parties and being advised of the status of the case, and good cause appearing,

IT IS HEREBY ORDERED:

1.  On or before <u>March 15, 2004</u>, all parties shall exchange with all other parties a list of all expert witnesses expected to be called at trial. The list shall include the name, address, and phone number of the expert and a brief statement identifying the subject areas as to which the expert is expected to testify. The list shall also include the normal rates the expert charges

02CV2429

1 for deposition and trial testimony.

2     On or before **March 29, 2004**, any party may supplement its
3 designation in response to any other party's designation so long
4 as that party has not previously retained an expert to testify on
5 that subject.

6     2.   A Technology Tutorial will be conducted before Judge
7 Rudi M. Brewster on **May 25-26, 2004**.

8     A Claims Construction Markman Hearing will be conducted
9 before Judge Rudi M. Brewster on **June 8-10, 2004**.

10     There shall be an exchange of preliminary claims
11 constructions and extrinsic evidence in advance of the Markman
12 Hearing, as follows:

13     (a)  **Forty-five days** before the Markman Hearing, each party
14 shall simultaneously exchange a list of claim terms, phrases, or
15 clauses which that party contends should be construed by the
16 Court, and identify any claim element which that party contends
17 should be governed by 35 U.S.C. § 112.

18     The parties shall thereafter meet and confer for the
19 purposes of finalizing this list, narrowing or resolving
20 differences, and facilitating the ultimate preparation of a Joint
21 Claim Construction and Prehearing Statement.

22     (b)  **Thirty days** before the Markman Hearing, the parties
23 shall simultaneously exchange a preliminary proposed construction
24 of each claim term, phrase, or clause which the parties have
25 collectively identified for claim construction purposes.  They
26 shall each also provide a preliminary identification of extrinsic
27 evidence they contend support their respective claim
28 constructions.

02CV2429

Ex. K-2

1    (c)   **Fifteen days** before the Markman Hearing, the parties

2  shall complete and file a Joint Claim Construction and Prehearing

3  Statement (in spreadsheet/matric format), which shall contain the

4  following information:

5            (1)   The construction of those claim terms, phrases, or

6  clauses on which the parties agree;

7  .          (2)   Each party's proposed construction of each

8  disputed claim term, phrase, or clause, together with an

9  identification of all references from the specification or

10  prosecution history that support that construction, and an

11  identification of any extrinsic evidence known to the party on

12  which it intends to rely.

13    (d)   Each side may file a brief supporting its position at

14  the same time the Joint Claim Construction and Prehearing

15  Statement is filed.  No party's brief shall exceed twenty (20)

16  pages in length without permission from Judge Rudi M. Brewster.

17    3.   On or before **July 1, 2004**, Defendant shall disclose in

18  writing if it intends to rely on an opinion of counsel as part of

19  a defense to a claim of willful infringement, and shall:[1]

20    (a)   Produce or make available for inspection and copying

21  the opinion(s) as to which that party agrees the attorney-client

22  or work product protection has been waived; and

23    (b)   Serve a privilege log identifying any other documents,

24  except those authored by counsel acting solely as trial counsel,

25  relating to the subject matter of the opinion(s) which the party

26

27        [1] If Defendant intends to rely on or refer to an opinion of counsel as extrinsic evidence to support its
28  proposed construction of any claim terms, such opinions must be disclosed no later than **30 days** before the
    Markman Hearing. Such disclosures will not constitute a general waiver of the attorney-client privilege.

3                                              02CV2420

Ex. K-3

1  is withholding on the grounds of attorney-client privilege or
2  work product protection.

3      A party opposing a claim of patent infringement who does not
4  comply with the requirements of this Order shall not be permitted
5  to rely on an opinion of counsel as part of a defense to willful
6  infringement absent a stipulation of all parties or by order of
7  the Court, which shall be entered only upon a showing of good
8  cause.

9      4.   All _non-expert_ discovery shall be completed by all
10 parties on or before _July 19, 2004_.  All _expert_ discovery and all
11 other discovery shall be completed by all parties on or before
12 _October 14, 2004_.  All disputes concerning discovery shall be
13 brought to the attention of the Magistrate Judge no later than
14 thirty (30) days following the date upon which the event giving
15 rise to the discovery dispute occurred.  "Completed" means that
16 all discovery un-der Rules 30-36 of the Federal Rules of Civil
17 Procedure must be initiated a sufficient period of time in
18 advance of the cut-off date, _so that it may be completed_ by the
19 cut-off date, taking into account the times for service, notice,
20 and response as set forth in the Federal Rules of Civil
21 Procedure.  Counsel shall meet and confer pursuant to the
22 requirements of Fed. R. Civ. P. 26 and Local Rule 26.1(a)

23     5.   Each party will exchange expert reports on the issues
24 on which they have the burden of proof on _August 13, 2004_,
25 containing the following information:

26     (a)  a complete statement of all opinions to be expressed by
27 that expert and the basis and the reasons for those opinions;

28     (b)  the data or other information considered by the witness

4

**Ex. K-4**

in forming his or her opinions;

    (c)   any exhibits to be used as a summary of or support for the opinions;

    (d)   the qualifications of the expert, including a list of all publications authored by the witness within the preceding ten years;

    (e)   the compensation to be paid for work performed, as well as deposition and trial testimony;

    (f)   a list of any other cases, by court, case name and case number, in which the witness has testified as an expert at trial or by deposition, within the preceding four years.   Discovery regarding experts, including files and depositions, shall be allowed as a matter of course.

    Subject to paragraphs 6 and 7 below, any party that fails to make these disclosures shall <u>not</u>, absent substantial justification, be permitted to use evidence or testimony not disclosed in their reports at any hearing or at the time of trial.   In addition, the Court may impose sanctions as permitted by FRCP 37(c).

    6.   On <u>August 27, 2004</u>, each party may submit rebuttal reports from their experts in response to the opposing side's expert reports, in accordance with FRCP 26(e).

    7.   On <u>September 6, 2004</u>, any party's expert may supplement their written reports.   Pursuant to Fed. R. Civ. P. 26(a)(2), these requirements apply to all experts offering expert opinions under Fed. R. Evid. 702, 703, 704, and 705, respectively.

    8.   All motions, other than motions to amend or join parties, or motions in limine, shall be filed <u>SO AS TO BE HEARD</u>

5

Ex. K-5

1  on or before November 15, 2004.

2  　　Motions will not be heard or calendared unless counsel for
3  the moving party has obtained a motion hearing date from the law
4  clerk of the judge who will hear the motion.  **Be advised that the**
5  **Court will not give a motion hearing date unless the parties are**
6  **prepared to file their moving papers in compliance with Local**
7  **Rule 7.1.  Be further advised that the period of time between the**
8  **date you request a motion date and the hearing date may be**
9  **approximately four to six weeks from the date of the request.**
10 **Please plan accordingly.**  For example, you may need to contact
11 the judge's law clerk at least six weeks in advance of the motion
12 cut-off to calendar the motion.  Failure of counsel to timely
13 request a motion date may result in the motion not being heard.
14 **Motions will not be heard on the above date unless you have**
15 **obtained that date in advance from the judge's law clerk.**

16 　　9.   As to all motions, it is counsels' responsibility to
17 call and confirm hearing dates so that motions are heard **ON OR**
18 **BEFORE** the dates indicated. .

19 　　10.  Briefs or memoranda in support of or in opposition to
20 any pending motion shall not exceed twenty-five (25) pages in
21 length without permission of the judge or magistrate judge who
22 will hear the motion.  No reply memorandum shall exceed ten (10)
23 pages without leave of the judge or magistrate judge who will
24 hear the motion. .

25 　　11.  A Mandatory Settlement Conference shall be conducted on
26 September 30, 2003, at 9:00 a.m. in the chambers of Magistrate
27 Judge James F. Stiven.  Counsel shall submit **confidential**
28 settlement statements **directly to chambers** no later than

6

Ex. K-6

1  September 23, 2003.  If the case does not settle sooner, another

2  Mandatory Settlement Conference shall be conducted on October 29,

3  2004, at 10:00 a.m. in the chambers of Magistrate Judge James F.

4  Stiven.  Counsel shall submit confidential settlement statements

5  directly to chambers no later than October 22, 2004.  Each

6  party's settlement statement shall set forth the party's

7  statement of the case, identify controlling legal issues,

8  concisely set out issues of liability and damages, and shall set

9  forth the party's settlement position, including the last offer

10  or demand made by that party, and a separate statement of the

11  offer or demand the party is prepared to make at the settlement

12  conference.  Settlement conference briefs shall not be filed with

13  the Clerk of the Court, nor shall they be served on opposing

14  counsel.

15      12.  All parties and claims adjusters for insured defendants

16  and representatives with complete authority to enter into a

17  binding settlement, as well as the principal attorney(s)

18  responsible for the litigation, must be present and legally and

19  factually prepared to discuss and resolve the case at the

20  mandatory settlement conference.  Retained outside corporate

21  counsel shall not appear on behalf of a corporation as the party

22  who has the authority to negotiate and enter into a settlement.

23      13.  Parties or their counsel shall serve on each other and

24  file with the Clerk of the Court their Memoranda of Contentions

25  of Fact and Law in compliance with Local Rule 16.1(f)(3) and (4)

26  on or before December 10, 2004.

27      14.  Counsel shall meet together and take the action

28  required by Local Rule 16.1(f)(5) on or before December 17, 2004.

02CV2429

Ex. K-7

1   At this meeting, counsel shall discuss and attempt to enter into
2   stipulations and agreements resulting in simplification of the
3   triable issues.  Counsel shall exchange copies and/or display all
4   exhibits other than those to be used for impeachment, lists of
5   witnesses and their addresses including experts who will be
6   called to testify, and written contentions of applicable facts
7   and law.  The exhibits shall be prepared in accordance with Local
8   Rule 16.1 (f)(3)(c).  Counsel shall note any objections they have
9   to any other parties' Pretrial Disclosures under Fed. R. Civ. P.
10  26(a)(3).  Counsel shall cooperate in the preparation of the
11  proposed pretrial conference order.

12      15.  The proposed final pretrial conference order shall be
13  prepared, served and lodged with the Clerk of the Court on or
14  before January 10, 2005, and shall be in the form prescribed in
15  and in compliance with Local Rule 16.1 (f)(7).  Counsel shall
16  also bring a court copy of the pretrial order to the pretrial
17  conference.

18      16.  The final pretrial conference shall be held before the
19  Honorable Rudi M. Brewster, United States District Court Judge,
20  on January 17, 2005 at 10:30 a.m.

21      17.  The trial in this matter shall commence on February 1,
22  2005, before the Honorable Rudi M. Brewster.

23      18.  The dates and times set forth herein will not be
24  further modified except for good cause shown.
25  /////
26  /////
27  /////
28  /////

8

02CV2429

Ex. K-8

1      19.  Plaintiff's counsel shall serve a copy of this order on

2  all parties that enter this case hereafter.

4  DATED: ___9-17-03___           _____

                          Hon. James F. Stiven

5                     United States Magistrate Judge

6  Copy to:  Hon. Rudi M. Brewster

              U.S. District Judge

7            All Counsel of Record

02CV2429

Ex. K-9



U.S. District Court
Southern District of California
880 Front Street, Room 4290
San Diego, CA 92101-8900

FAX-IN-TIME   NOTICE:
This fax is an official communication of the
U.S. District Court for the Southern District
of California. Please be aware that these are
the only copies of these documents that you
will receive unless specifically requested.

---

To: James Batchelder

Date 09/19/03

From: Clerk U.S. District Court

Page 1 of 10

---

Fax queued: 09/19/03 at 09:37:54                    CASE: 022429-CV #00040

CONFIDENTAL
Any questions about missing pages or unreadable copy, please call (619)
557-7667. The information contained in this facsimile message is attorney
privileged and confidential. It is intended only for the use of the
individual or entity named above. If the reader of this message is not the
intended recipient, or the employee or agent responsible to deliver it to
the intended recipient, you are hereby notified that any dissemination,
distribution or copying is strictly prohibited. If you have received this
communication in error, please call us immediately. Thank you.

IMAGES OF CASE FILINGS NOW AVAILABLE ON THE INTERNET!

Web PACER provides users with browser access to dockets and scanned images
of filed documents without leaving the comfort of their office/home.
Document copies can now be obtained more quickly and without making a trip
to the ClerkÆs Office.  Users with a PACER account can visit
http://pacer.casd.uscourts.gov/index.php via user i.d. and password for
immediate Web PACER access to the Southern District of CAÆs docket and case
filings.  Links to other courtsÆ Web PACER sites can be found at
http://pacer.psc.uscourts.gov/cgi-bin/links.pl.  An access fee of $.07 per
page viewed will be assessed.  Those interested in establishing a PACER
account can contact the PACER Service Center at (800) 676-6856 or register
on line at www.pacer.psc.uscourts.gov.

Mail & fax related issues, such as incomplete or illegible pages, should be
directed to
(619)557-7667.

Ex. K-10

# Local Rules of the
# United States District Courts for the
# Southern and Eastern Districts of New York

**Effective April 15, 1997**

**Includes Amendments
through March 3, 2003**

Ex. L-1

**Local Rules of the**
**United States District Courts for the**
**Southern and Eastern Districts of New York**

## <u>Table of Contents</u>

<u>Page</u>

LOCAL CIVIL RULES
1.1. Application of Rules . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
1.2. Clerk's Office . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
1.3. Admission to the Bar . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
1.4. Withdrawal or Displacement of Attorney of Record . . . . . . . . . . . . . . . . . . . . . . 4
1.5. Discipline of Attorneys . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
1.6. Duty of Attorneys in Related Cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
1.7. Fees of Clerks and Reporters . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
1.8. Photographs, Radio, Recordings, Television . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
1.9. Disclosure of Interested Parties - *Repealed* . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
1.10. Acceptable Substitutes for Affidavits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
5.1. Filing of Discovery Materials . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
5.2. Electronic Service and Filing of Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
5.3. Service by Overnight Delivery and Fax . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
6.1. Service and Filing of Motion Papers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
6.2. Orders on Motions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
6.3. Motions for Reconsideration or Reargument . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
6.4. Computation of Time . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
7.1. Memoranda of Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
7.2. Specification of Statutes or Rules . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
11.1. Form of Pleadings, Motions, and Other Papers . . . . . . . . . . . . . . . . . . . . . . . . 16
12.1 Notice to Pro Se Litigants Opposing Motions to Dismiss or for
        Judgment on the Pleadings Treated as Motions for Summary
        Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
16.1. Exemptions from Mandatory Scheduling Order . . . . . . . . . . . . . . . . . . . . . . . . 18
16.2. Entry and Modification of Mandatory Scheduling Orders by
        Magistrate Judges . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
23.1. Fees in Stockholder and Class Actions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
24.1. Notice of Claim of Unconstitutionality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
26.1. Address of Party and Original Owner of Claim to Be Furnished . . . . . . . . . . . . . 19
26.2. Assertion of Claim of Privilege . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
26.3. Uniform Definitions in Discovery Requests . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
26.4. Opt-Out From Certain Provisions of Federal Rule of Civil Procedure
        26 (Southern District Only) - Repealed December 1, 2000 . . . . . . . . . . . . . . . . . 23
26.5. Cooperation Among Counsel in Discovery (Eastern District Only) . . . . . . . . . . . 23
26.6. Form Discovery Requests (Eastern District Only) . . . . . . . . . . . . . . . . . . . . . . . 24

- i -

Ex. L-2

26.7. Discovery Requests to Be Read Reasonably (Eastern District Only) .......... 24
30.1. Counsel Fees on Taking Depositions More Than 100 Miles From
    Courthouse ................................................. 24
30.2. Opt-Out From Certain Provisions of Federal Rule of Civil Procedure
    30 (Southern District Only) - Repealed December 1, 2000 ................. 25
30.3. Telephonic Depositions (Eastern District Only) .......................... 25
30.4. Persons Attending Depositions (Eastern District Only) ..................... 25
30.5. Depositions of Witnesses Who Have No Knowledge of the Facts
    (Eastern District Only) ...................................... 26
30.6. Conferences Between Deponent and Defending Attorney (Eastern
    District Only) ........................................... 26
30.7. Document Production at Depositions (Eastern District Only) ............... 26
31.1. Opt-Out From Certain Provisions of Federal Rule of Civil Procedure
    31 (Southern District Only) - Repealed December 1, 2000 ................. 27
33.1. Answering Interrogatory by Reference to Records ........................ 27
33.2. Standard Discovery in Prisoner Pro Se Actions ........................... 28
33.3. Interrogatories (Southern District Only) ............................... 30
33.4. Opt-Out From Certain Provisions of Federal Rule of Civil Procedure
    33 (Southern District Only) - Repealed December 1, 2000 ................. 31
34.1. Opt-Out From Certain Provisions of Federal Rule of Civil Procedure
    34 (Southern District Only) - Repealed December 1, 2000 ................. 31
36.1. Opt-Out From Certain Provisions of Federal Rule of Civil Procedure
    36 (Southern District Only) - Repealed December 1, 2000 ................. 31
37.1. Verbatim Quotation of Interrogatories, Requests for Admissions,
    and Objections or Exceptions ................................. 31
37.2. Mode of Raising Discovery Disputes With the Court (Southern
    District Only) ........................................... 32
37.3. Mode of Raising Discovery and Other Non-Dispositive Pretrial
    Disputes With the Court (Eastern District Only) ........................ 32
39.1. Custody of Exhibits .............................................. 34
39.2. Order of Summation .............................................. 34
47.1. Assessment of Jury Costs .......................................... 34
53.1. Masters ........................................................ 35
54.1. Taxable Costs ................................................... 36
54.2. Security for Costs ................................................ 39
54.3. Entering Satisfaction of Money Judgment .............................. 39
55.1. Certificate of Default ............................................. 40
55.2. Default Judgment ................................................ 40
56.1. Statements of Material Facts on Motion for Summary Judgment ............. 41
56.2. Notice to Pro Se Litigants Opposing Summary Judgment ................... 42
58.1. Remand by an Appellate Court ...................................... 43
65.1.1. Sureties ....................................................... 43
67.1. Order for Deposit in Interest-Bearing Account .......................... 44

Ex. L-3

72.1.   Powers of Magistrate Judges . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45
72.2.   Reference to Magistrate Judge (Eastern District Only) . . . . . . . . . . . . . . . . . . . . 46
73.1.   Consent Jurisdiction Procedure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47
77.1.   Submission of Orders, Judgments and Decrees . . . . . . . . . . . . . . . . . . . . . . . . . . 47
81.1.   Removal of Cases from State Courts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48
83.1.   Transfer of Cases to Another District . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49
83.2.   Settlement of Actions by or on Behalf of Infants or Incompetents,
        Wrongful Death Actions [*, and Conscious Pain and Suffering
        Actions* (EDNY only)] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49
83.3.   Habeas Corpus . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . : . . 50
83.4.   Proceedings to Stay the Deportation of Aliens in Deportation and
        Exclusion Cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51
83.5.   Three-Judge Court . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53
83.6.   Publication of Advertisements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54
83.7.   Notice of Sale . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54
83.8.   Filing of Notice of Appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56
83.9.   Contempt Proceedings in Civil Cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56
83.10.  Court-Annexed Arbitration (Eastern District Only) . . . . . . . . . . . . . . . . . . . . . 58
83.11.  Court-Annexed Mediation (Eastern District Only) . . . . . . . . . . . . . . . . . . . . . . 66
83.12.  Alternative Dispute Resolution (Southern District Only) . . . . . . . . . . . . . . . . . . 73

## LOCAL ADMIRALTY AND MARITIME RULES

A.1.   Application of Rules . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 77
B.1.   Affidavit That Defendant Is Not Found Within the District . . . . . . . . . . . . . . . . . 77
B.2.   Notice of Attachment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 77
C.1.   Intangible Property . . . . . . . . . . . . . . . . : . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 78
C.2.   Publication of Notice of Action and Arrest; Sale . . . . . . . . . . . . . . . . . . . . . . . . 78
C.3.   Notice Required for Default Judgment in Action In Rem . . . . . . . . . . . . . . . . . . . 79
D.1.   Return Date in Possessory, Petitory, and Partition Actions . . . . . . . . . . . . . . . . . 80
E.1.   Adversary Hearing Following Arrest, Attachment or Garnishment . . . . . . . . . . . . 80
E.2.   Intervenors' Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 80
E.3.   Claims by Suppliers for Payment of Charges . . . . . . . . . . . . . . . . . . . . . . . . . . . 81
E.4.   Preservation of Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 82

## LOCAL CRIMINAL RULES

1.1.   Application of Rules . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 83
1.2.   Applications for Ex Parte Orders . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 83
12.1.  Service and Filing of Motion Papers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 83
16.1.  Conference of Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 84
23.1.  Free Press-Fair Trial Directives . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 84
34.1.  Post-Trial Motions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 88
44.1.  Notice of Appearance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 89
45.1.  Computation of Time . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 90

**Ex. L-4**

58.1. Powers of Magistrate Judges . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . : 90
58.2. Petty Offenses–Collateral and Appearance . . . . . . . . . . . . . . . . . . . . . . . . . . . 90

RULES FOR THE DIVISION OF BUSINESS AMONG DISTRICT JUDGES
  **SOUTHERN DISTRICT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 92
  1. Individual Assignment System . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 92
  2. Assignment Committee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 92
  3. Part I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 93
  4. Civil Actions or Proceedings (Filing and Assignment) . . . . . . . . . . . . . . . . . . . . . 93
  5. Civil Proceedings in Part I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 94
  6. Criminal Actions or Proceedings (Filing and Assignment) . . . . . . . . . . . . . . . . . . . 96
  7. Criminal Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 96
  8. Arraignments and Assignments in Criminal Cases . . . . . . . . . . . . . . . . . . . . . . . 97
  9. Cases Certified for Prompt Trial or Disposition . . . . . . . . . . . . . . . . . . . . . . . . 98
  10. Motions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 99
  11. Amendments of *Pro Se* Petitions for Collateral Relief from
        Convictions . . . . . . . . . . . . . . . . . . . : . . . . . . . . . . . . . . . . . . . . 100
  12. Assignments to New Judges . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 100
  13. Assignments to Senior Judges . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 101
  14. Assignments to Visiting Judges . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 102
  15. Transfer of Related Cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 102
  16. Transfer of Cases by Consent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 104
  17. Transfers from Senior Judges . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 104
  18. Transfer Because of Disqualification, etc. . . . . . . . . . . . . . . . . . . . . . . . . . . 104
  19. Transfer of Cases Because of Death, Resignation, Prolonged Illness,
        Disability, Unavoidable Absence, or Excessive Backlog of a
        Judge . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 104
  20. Transfer of Cases to the Suspense Docket . . . . . . . . . . . . . . . . . . . . . . . . . . 105
  21. *Designation of White Plains Cases* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 105
  22. Reassignment of Cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 106
  23. Removed Actions and Bankruptcy Matters . . . . . . . . . . . . . . . . . . . . . . . . . . 107
  24. Caseload of White Plains Judge(s) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 107
  25. Prisoner Civil Rights Actions and *Habeas Corpus* Petitioners . . . . . . . . . . . . . . . 107
  26. Filing at Either Courthouse . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 108
  27. Related Cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 108
  28. High-Security Criminal Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 108
  29. Part I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 108
  30. Naturalization . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 108
  31. Jury Assignments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 109
  32. Court Hours . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 109
  33. Emergency Matters . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 109
  **EASTERN DISTRICT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 110

Ex. L-5

50.1  Categories and Classification of Cases; Information on Cases and
       Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 110
50.2  Assignment of Cases  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 112
50.3  Related Cases; Motion for Consolidation of Cases  . . . . . . . . . . . . . . . . . . . 115
50.4  Reassignment of Cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 117
50.5  Miscellaneous Judge . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 117
50.6  Calendars . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 118
50.7  Conference  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 119

VARIOUS RULES TABLES
      Local Civil Rules Derivation Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 120
      Local Civil Rules Conversion Table  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 122
      Local General Rules Conversion Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 124
      Local Magistrate Judge Rules Conversion Table . . . . . . . . . . . . . . . . . . . . . . 124
      E.D.N.Y. Standing Orders Conversion Table  . . . . . . . . . . . . . . . . . . . . . . . . 125
      Local Admiralty and Maritime Rules Derivation Table  . . . . . . . . . . . . . . . ., 126
      Local Admiralty and Maritime Rules Conversion Table . . . . . . . . . . . . . . . . . 126
      Local Criminal Rules Derivation Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 127
      Local Criminal Rules Conversion Table . . . . . . . . . . . . . . . . . . . . . . . . . . . . 127

Ex. L-6

or relevance or (ii) as otherwise provided in the instructions to the requests. The responses to the requests shall be served upon the plaintiff and shall be filed with the Pro Se Office of the court. Copies of the requests are available through the Pro Se Office of the court.

(e) Except upon permission of the court, for good cause shown, the requests shall constitute the sole form of discovery available to plaintiff during the 120-day period as designated above.

(f) If the Pro Se Office determines that this rule applies, it shall provide copies of the standard requests to those pro se plaintiffs for service upon defendants together with the summons and complaint.

**Local Civil Rule 33.3.  Interrogatories (Southern District Only)**

(a) Unless otherwise ordered by the court, at the commencement of discovery, interrogatories will be restricted to those seeking names of witnesses with knowledge of information relevant to the subject matter of the action, the computation of each category of damage alleged, and the existence, custodian, location and general description of relevant documents, including pertinent insurance agreements, and other physical evidence, or information of a similar nature.

(b)  During discovery, interrogatories other than those seeking information described in paragraph (a) above may only be served (1) if they are a more practical method of obtaining the information sought than a request for production or a deposition, or (2) if ordered by the court.

- 30 -

Ex. L-7

(c) At the conclusion of other discovery, and at least 30 days prior to the discovery cut-off date, interrogatories seeking the claims and contentions of the opposing party may be served unless the court has ordered otherwise.

[Source: Former Local Civil Rule 46 (Southern District Only)]

**Local Civil Rule 33.4. Opt-Out From Certain Provisions of Federal Rule of Civil Procedure 33 (Southern District Only) - Repealed December 1, 2000**

**Local Civil Rule 34.1. Opt-Out From Certain Provisions of Federal Rule of Civil Procedure 34 (Southern District Only) - Repealed December 1, 2000**

**Local Civil Rule 36.1. Opt-Out From Certain Provisions of Federal Rule of Civil Procedure 36 (Southern District Only) - Repealed December 1, 2000**

**Local Civil Rule 37.1. Verbatim Quotation of Interrogatories, Requests for Admissions, and Objections or Exceptions**

Upon any motion involving objections or exceptions addressed to interrogatories, answers to interrogatories or requests for admissions, under Rule 37(a) of the Federal Rules of Civil Procedure, the moving party shall specify and quote or set forth verbatim in the motion papers (a) each interrogatory, answer or request to which the objection or exception is taken, and, immediately thereafter, (b) the objection or exception to such interrogatory, answer or request. The motion shall also set forth the grounds upon which the moving party is entitled to prevail as to each interrogatory, answer or request to which the objection or exception is taken.

[Source: Former Local Civil Rule 3(e)]

- 31 -

**Ex. L-8**